BLOUNT v. WALKER.

1. Where a testatrix gave *"all* the estate, real and personal, of which I may die seized, possessed, and entitled to" to "W and his heirs" on certain trusts, which, in the events subsequently occurring, did not exhaust the entire beneficial interest, and there was no residuary clause, the trustee took the fee and there was no intestacy.

2. Where an estate was devised and bequeathed to "W and his heirs to the use of W and his heirs, in trust" for B for life and then to her issue, or, failing issue, to such person as B might appoint, with power to W to sell and turn over the proceeds to B free of all trusts, the power of sale and of paying over required the trustee to have the fee ; and the fee having vested in the trustee it could not be taken away except by operation of the statute of uses or by his own conveyance, or by some provision in the will by way of executory devise.

3. Even if a qualified and determinable fee could arise *by descent* in the heir at law, subject to be divested by an exercise of the power of sale

given to the trustee, there was no such estate under the terms of this will.

4. In this will there was no gift over, in the events which subsequently happened, and there has been no conveyance by the trustee. The statute of uses has no application to personal property, and as to the real estate, this statute did not execute the use in the heir at law, because, (1) the primary use was executed in the trustee ; and (2) the trustee had duties to perform which required the legal estate to remain in him.

5. But as the trustee was given no beneficial interest, a trust resulted to the heir at law of testatrix, upon the termination of the declared trusts, and therefore to such person as answered that description at that time, and not to the heir at law at the death of testatrix. Until the death of the life tenant without issue and without appointment, it was a mere possibility, which is not the subject of devise or inheritance. *Cases reviewed.*

Mr. CHIEF JUSTICE SIMPSON, *dissenting.*

Before HUDSON, J., Richland, July, 1888.

On December 5, 1885, Sarah J. Harris died, leaving of force her will, which was as follows :

THE STATE OF SOUTH CAROLINA.

In the name of God. Amen. I, Sarah J. Harris, widow, of the city of Columbia, in the State aforesaid, being of sound mind, memory, and understanding, do make, publish, and declare this my last will and testament.

Item I. I give, bequeath, and devise to my nephew, Julius H. Walker and his heirs, to the use of the said J. H. Walker and his heirs, all the estate, real and personal, of which I may die seized, possessed, and entitled to : in trust, nevertheless, to permit my daughter, Mrs. Mary Delia Blount, for and during the term of her natural life (unless the trust be sooner executed, as is hereinafter provided in item II.), to receive unto her own sole, separate, and exclusive use, benefit, and behoof, all the rents, issues, and profits of the said estate, upon her own receipts and acquittances. And to the said J. H. Walker, in his character as trustee as aforesaid, full power and authority is given to sell, exchange, or transfer, if in his judgment expedient, any part of the estate hereby given him in trust, and to execute all necessary papers to that end, whenever he is thereunto requested by a paper in writing, executed by said Mrs. Blount in the presence of some clerk of a court of record, who shall certify, under his hand and official seal, that the said request was so signed separately and privately in his presence ; and the said trustee, upon such sale,

exchange, or transfer, shall either reinvest the proceeds or else turn the same over to the said Mrs. Blount for her sole, separate, and absolute use, freed and discharged of all trusts, as the said Mrs. Blount may direct by her writing, executed in manner and form as required aforesaid, for the request to sell, exchange, or transfer: *Provided*, that the said J. H. Walker, as trustee as aforesaid, is satisfied that the disposition so requested by said Mrs. Blount is her free and untrammelled wish, and is for her own exclusive benefit and behoof; but if not so satisfied, he shall reinvest the proceeds according to his best judgment, and under the rules of law. The power hereinabove given to the said J. H. Walker, as trustee as aforesaid, is a continuing power, and shall not be exhausted by one or more exercises thereof, but shall continue in full force so long as the trust remains unexecuted and any portion of the trust estate remains.

Item II. But if, at any time, the said property, or any part thereof, shall be legally advertised for sale for payment of the debt or debts of said Mrs. Blount, under or by virtue of any attachment, execution, or decree or order of court, or under any power of sale given by the said Mrs. Blount, to or for the use of any creditor or other person (such attachment, execution, decree, order, or power of sale being valid in law or equity); or if at any time said Mrs. Blount shall execute a valid power, authorizing a sale of the said property, or any part thereof, without advertisement; or if at any time process or order of any court of competent jurisdiction shall take the interest of said Mrs. Blount in said property, or any part thereof, away from her: then, in any of the cases specified in this item of this will, the uses above declared shall instantly shift to the issue then living of said Mrs. Blount, to them and their heirs forever, *per stirpes* and not *per capita*, to the extent of the property affected by any of the advertisements, orders, or papers aforesaid, and to the same extent the trusts by this will declared shall instantly become executed; but in default of issue of Mrs. Blount then living, then the said J. H. Walker shall continue to hold such property in trust to preserve the rents, issues, and profits thereof, and to accumulate the same until the death of said Mrs. Blount, when the property so affected and its accumulations shall pass under the provisions of item III. of this will.

Item III. Upon the death of the said Mrs. Blount, the said property, or so much thereof as remains unconsumed and undisposed of in the hands of said J. H. Walker, trustee as aforesaid, is hereby bequeathed and devised to the issue of the said Mrs. Blount, to them and their heirs forever, *per stirpes* and not *per capita ;* and if the said Mrs. Blount die without issue surviving

her at the time of her death, then the same is devised and bequeathed to such person or persons and in such proportions as the said Mrs. Mary Delia Blount may appoint by her last will and testament duly executed, to the said appointees and their heirs forever; and upon the death of the said Mrs. Blount, the trusts of this will shall become instantly executed (so far as the same have not been before that time executed under the provisions of item II. of this will) in favor of the person or persons in this item designated as remaindermen, without any relinquishment or transfer of trust by the said trustee.

Item IV. I hereby nominate and appoint Julius H. Walker executor of this will.

In witness whereof, I have signed my name at the foot of this will, and also on the first half sheet thereof, at Columbia, in the presence of my three chosen witnesses, this eleventh day of September, in the year of our Lord one thousand eight hundred and eighty-five.     SARAH J. HARRIS, [L.S.]

On April 9, 1886, M. Delia Blount, the only child of Mrs. Harris, died at her home in North Carolina without issue, leaving of force her will duly executed according to the laws of North Carolina, but not executed according to the requirements of South Carolina law. See *Blount* v. *Walker*, 28 S. C., 545. The question here presented to the court was, to whom did the estate of Mrs. Harris pass? The Circuit Judge decreed as follows:

This case has been once heard upon Circuit, and a decree rendered therein by Judge Wallace, who held that the power in the will of Mrs. Sarah J. Harris of the 11th of September, 1885, was properly executed by Mrs. Mary Delia Blount, by the execution of her last will and testament in which the property conveyed* to her in the will of Mrs. Sarah J. Harris was by her appointed to be conveyed by the trustee of Mrs. Harris's will to her husband, the present plaintiff, William H. Blount. On appeal to the Supreme Court, it was adjudged that the last will and testament of Mrs. Mary Delia Blount, executed in the State of North Carolina, was not a will duly executed in accordance with the laws of South Carolina, and did not, therefore, constitute a due execution of the power. 28 S. C., 515. The decree of Judge Wallace was reversed, and this case remanded to the Circuit Court for the sole purpose of ascertaining to whom the property, conveyed by the will of Mrs. Sarah J. Harris, shall now

go ; whether it shall go to those who stood in the relation of heirs at law of Mrs. Harris immediately after her death, or to those who stood in that relation after the death of Mrs. Blount. That is the sole question which has been argued before me ; it has been argued with great learning and research, and the determination of the question has given me no little trouble. I have listened carefully to the arguments of counsel on both sides. I have taken time to read those arguments, and also to consult from the books the leading authorities cited by counsel on both sides.

The question involves the construction of the will of Mrs. Sarah J. Harris. It is contended by the plaintiff that under her will a life estate only was conveyed to her daughter, Mary Delia Blount, with power on her part during life, by her last will and testament duly executed, to appoint the persons to whom the property should go after her death, and in the absence of that appointment it should go to her surviving issue ; that no provision is made as to what shall become of the estate in case Mrs. Blount should die without leaving a surviving issue, and also without executing the power. Those contingencies having arrived, and the estate being now in the hands of the trustee without any further disposition on the part of the testatrix, the plaintiff contends that as to the property the testatrix died intestate, except the personal property, which was, by the last will and testament of Mary Delia Blount, properly and lawfully disposed of to her husband, the present plaintiff.

It is contended by the defendants, on the other hand, that there can be no intestacy of the property conveyed by Sarah J. Harris, under the events which have transpired, to wit, the death of Mary Delia Blount, without executing the power and without leaving issue of the body ; that, in the first instance, the entire estate, the absolute title to the personal property, and the fee in all the real estate,, was conveyed in language clear and distinct to Julius H. Walker and his heirs, for the use of the said Julius H. Walker and his heirs, upon certain trusts set forth in the will ; that thus having divested herself of her entire estate, there cannot, in any event, happen that she could have died intestate as to any portion of the property ; that once having conveyed the whole estate absolutely and in fee, that she would cease there-

3—31

after, in any event that could possibly happen under the will, to be the stock of inheritance, and that all of the trusts under the will having failed, there is now a resulting trust arising immediately upon the death of Mary Delia Blount, and that it must result to those who at that time were living and fulfilled the description of heirs at law of Sarah J. Harris, and were able to take; that it could not result to those who fulfilled the description of heirs at law of Sarah J. Harris immediately after her death.

This is the point of contention between the parties and it turns upon the question as to what class of heirs of Sarah J. Harris the estate shall go; whether to those in existence immediately upon her death, or to those in existence immediately upon the death of the life-tenant, Mary Delia Blount. I would have no difficulty in determining this question were it not for the estate which, by the will, was vested in Julius H. Walker and his heirs upon the trust set forth in the will. It is the intervention of this trustee, thus vested with the estate absolute and in fee, which gives rise to the contention in this case, and renders adjudication difficult. I am clearly of the opinion that if there was no trustee, or if the trustee was not vested with the fee, there would be no difficulty in determining this question; and that in that event Mrs. Sarah J. Harris would clearly have died intestate, as an estate remaining undisposed of by will, in the event that Mary Delia Blount died without heirs of the body surviving and without executing the power.

Now, the serious question, the fundamental question, that which is the most embarrassing, is, what effect the intervention of the trustee in this case has. I take it as a well settled principle, that an estate conveyed to a trustee will never be extended beyond the purposes of the trust; that it is conveyed for the purpose of the trust, and for no other; if it be an estate to the trustee less than a fee, and for the purpose of the execution of the trusts it be necessary that a fee should abide in the trustee, the estate will be enlarged. If the conveyance to the trustee, on the other hand, be a fee, and for the purposes of the execution of the trust a lesser estate than a fee will answer, then the courts will cut down the estate so as to make it commensurate with the trust

imposed on the trustee. No trustee can hold an estate which is larger than the purpose of the trust unless there be some beneficial interest to the trustee, giving him a right to the estate independently of an outside or other trust that may be embodied in the deed. I do not deem it necessary to cite authorities on this point; the authorities I consider ample, and they have been given by counsel on both sides, and if the further investigation of the case renders it necessary, they can be given again.

Now, with this fundamental idea—this fundamental principle, if it be a correct principle (and I take it, it is)—I hold that this deed may be interpreted as well without the words, "trustee and their heirs," as if those words were there. In other words, that the estate in the trustee in this case will be held by the court to be only commensurate with the trust imposed. After an examination of all the authorities cited, with the abstruse principles contained in them, and finding none directly, or in all respects applicable to this case in all their words, that is, on "all-fours" with this, I have settled upon the conclusion that this will being properly interpreted, the property will be disposed of according to the principles contained in the case of " *Wiley Pulliam et al.* v. *Thomas B. Byrd et al.,*" contained in Strobhart's Equity, vol. 2, page 135; and the principle there held is set forth in the syllabus of that case. It reads as follows: "Testator, by his will, left to his wife a life estate in his whole property, with power to dispose of one-half at her death ; and she died without having made any appointment under the power : *held,* that at her death the whole property, as intestate, became distributable, one moiety to the next of kin of the testator, and the other moiety to the next of kin of the wife. Where there is a gift to one for life, with a general power of appointment, the power of appointment does not enlarge the life estate into an absolute interest, and nothing passes under the clause conferring the power, unless it be exercised."

Now, after an examination of the present will and all the clauses thereof, it is very clear that to Mrs. Blount there was given only a life estate, with the power on her part, however, to dispose of the property by last will and testament duly executed, which she did not do, and the remainder to the issue of her body, and that issue she never had. It is not contended by the counsel in the

argument on either side, that a greater than a life estate was given to Mrs. Blount. It is conceded that all the trusts of this will have fallen through, and the event has now arrived when the property must go to the heirs at law of Sarah J. Harris; how it shall go, and at what period of time persons fulfilling that description shall be ascertained, is the question.

I hold, that whether the estate is considered intestate, or whether the trust is simply resulting, as is contended by defendants, that in either event the property must go back to the estate of Sarah J. Harris, that is to say, to those who at the time of her death were her heirs at law. This would be exactly in accordance with the course which the property took in the case I have just cited of Pulliam *et al. versus* Byrd *et al.* Divesting this case of this estate in fee, which is vested in the trustee—removing that feature, I regard the two cases as of "all-fours." Now, the intervention of the trustee in this case, and the fact that the fee is conveyed to the trustee, in my opinion, makes no difference.

At the time that Mrs. Harris died, her sole heir was Mary Delia Blount; she, therefore, was the only person in whom the property could vest upon the failure of all these trusts, and, in my opinion, it vested in her because it reverted to the estate of Sarah J. Harris as intestate property. It clearly stood undisposed of by will: after all the contingencies had happened whereby the estate fell in. It remains now in the hands of the trustee as property which Mrs. Sarah Harris never disposed of by will, except in so far as it was conveyed to the trustee in fee; and, as I have remarked, that conveyance in fee was only commensurate with the continuance and existence of the trust. All of the trusts having failed, the estate in fee of the trustee is cut down and the whole property reverts as intestate property to the person who was heir at law of Sarah J. Harris immediately upon her death, to wit, Mary Delia Blount. Even if we take it that it is not intestate property, but view it as property held in fee by the trustee, Julius H. Walker, it is held clearly not for his own benefit, but for the benefit of the heirs at law of Sarah J. Harris; and I know of no reason why we should adopt the period of the death of Mary Delia Blount to fix the stock of inheritance any

more than the period of the death of the testatrix, Sarah J. Harris. So that, in my opinion, viewing the limitation, and the nature and character of the estate of the trustee, that event has arrived when this property is no longer vested in the trustee, except for the original estate of Mrs. Harris, and her heirs at law existing at the time of her death are the ones to whom the property shall go. Now, that sole heir was Mrs. Mary Delia Blount, who having died, her heirs at law are her husband, William H. Blount, the plaintiff, to whom will go the personal property and one-half of the real estate, and Mrs. Caroline S. Walker, who is aunt and next of kin of Mrs. Blount, and to whom will go the other moiety of the real estate.

And it is so ordered, adjudged, and decreed.

From this decree, J. H. Walker, the trustee, and his mother, Mrs. Walker, the sister of Mrs. Harris, appealed upon several grounds, which substantially made the point that, in the events which had transpired, Mrs. Caroline S. Walker was entitled to the whole estate, real and personal, of Mrs. Sarah J. Harris, deceased.

*Messrs. Pope & Shand*, for appellants.

*Mr. Allen J. Green*, contra.

April 15, 1889. The opinion of the court was delivered by

MR. JUSTICE McIVER. The fundamental question in the case, as it seems to me, is, what estate did the trustee take under the will of Mrs. Harris? If he took an estate in fee, then there can be no intestacy, for the testatrix devises her whole estate to the trustee and there was no room for any intestacy. If, however, the trustee took an estate only for the life of Mrs. Blount, then, as the ulterior limitations after the death of the life tenant have failed by reason of her dying without issue, and without executing the power of appointment, there is a case of intestacy, and the estate, subject to the life interest of Mrs. Blount, descended immediately upon the death of the testatrix to her heirs, and as Mrs. Blount was then her sole heir, became vested in her,

and the personal property passed under her will, while the real estate goes to her heirs; her will being sufficient to pass personal property, but insufficient to pass real estate.

I think that under a proper construction of the will of Mrs. Harris the trustee took a fee. There can be no doubt that the testatrix intended to dispose of her entire estate, and did not intend to die intestate as to any portion thereof. This appears from the terms she has used, for she gives to the trustee "*all* the estate, real and personal, of which I may die seized, possessed, and entitled to." That this language imports an intention to dispose of the fee, is shown by the case of *Canedy* v. *Jones*, 19 S. C., 300, 301, and the authorities there cited. Next, it will be observed that she uses technical terms which are apt and appropriate to convey a fee—"to my nephew, Julius H. Walker, *and his heirs.*" And finally, we observe that there is no residuary clause in the will, disclosing even an apprehension that she had left any portion of her estate undisposed of. We have, then, a case in which the testatrix has, in express terms, declared her purpose to dispose of her entire estate, which, the authorities above cited show, means not merely the entire *corpus* of the property, but the whole of her interest therein, which is conceded to have been a fee; and we find her using the most apt and appropriate technical words to convey such an interest—to the trustee "*and his heirs*"—and therefore I cannot doubt that she intended to confer a fee upon the trustee, and that she executed that intention in the most approved form of law.

If this be so, then, as it seems to me, it follows inevitably that there could have been no intestacy. If the entire interest of the testatrix—the fee—passed to the trustee by the terms of the will, there could, of course, be nothing left to descend to the heirs or representatives—no intestacy.

It is said, however, that this being a devise to a trustee, who, it is conceded, takes no beneficial interest, the well settled rule is, that however ample may be the terms in which a devise to a trustee is made, he will only take such an estate as may be necessary to the complete execution of the trusts created; that a devise to a trustee and his heirs does not necessarily create in him an estate in fee, though the terms used are sufficient to create such

an estate, but that his estate will be measured by the purposes for which it was created, and will be cut down to such an estate as will be sufficient to serve those purposes. Conceding, for the purposes of this discussion, the correctness of that rule in its broadest extent, before it can have any practical application to this case, it would be necessary to show that the objects of the trust created by the will could be fully accomplished by an estate in the trustee less than a fee. We must therefore inquire into the objects of the trusts created. Without going into any detailed statement of these trusts, which are minutely specified in the will, a copy of which will doubtless be embraced in the report of this case, it will be sufficient to say in general terms that the trustee was to hold the estate for the sole and separate use of Mrs. Blount during her life, in such a way as that the same could not be reached by her creditors, or disposed of by her, but with power in the trustee, upon her written request, to sell the same or any part thereof, if he should deem it expedient to do so, and either reinvest the proceeds "or else turn the same over to the said Mrs. Blount for her sole, separate, and absolute use, freed and discharged of all trusts."

Now, while it may be conceded that, so far as what may be called the primary object of this trust—protecting the estate during the life of Mrs. Blount—is concerned, such object might be fully accomplished by placing an estate for the life of Mrs. Blount in the trustee, or cutting down his estate in fee to an estate *pur autre vie*, yet I do not see how the next object—the power of sale—could be accomplished except by leaving in the trustee an estate in fee; exactly what the testatrix had in express terms conferred upon him. For it seems to me to be well settled, both upon principle and authority, that a devise to trustees and their heirs, with power to sell, necessarily imports a fee, as they cannot convey any greater estate than that which they hold—they cannot sell and convey the fee unless the fee is in them. As is said by Harper, Ch., in *Ex parte Gadsden*, 3 Rich., at page 477 : "The power to sell relates to the whole estate, and to satisfy that the whole must remain in them." See also *Ayer* v. *Ritter* (29 S. C., 135), where the more recent cases are collected. It is true, these cases were concerned with the question as to whether

the statute of uses had executed the use, but still they serve to show that where the power of sale is conferred upon trustees, it is necessary to the execution of such power that the legal estate should remain in the trustees.   If, therefore, the estate in fee vested in the trustee, Julius H. Walker, by the terms of the will, it must remain in him in order to accomplish one of the objects of the trust, and it could not, under the rule invoked, be cut down to any lesser estate.   So, too, if his estate should be thus cut down, I do not see how he could have performed another duty required by the terms of the trust—turn over the proceeds of any sale he might make "to the said Mrs. Blount for her sole, separate, and absolute use, freed and discharged of all trusts," if she so directed in writing.

It is said, however, that as this power of sale does not appear to have been exercised, the event shows that there was no necessity for the fee to remain in the trustee.   But it must be remembered that we are now considering the question of intestacy, and must therefore look at the case as it was presented at the time of the death of Mrs. Harris, when the fee must necessarily have passed to some one, as it could not be in abeyance.   If it then vested in the trustee, it could not afterwards be taken out of him except by the operation of the statute of uses, or by his own conveyance, or by some provision in the will by way of executory devise.   It could never afterwards pass to the heirs as intestate property.   As is said by Harper, Ch., in *Ex parte Gadsen*, *supra:* "But if the fee be once vested in the trustees, the inheritance remains in them; unless perhaps a shifting use should be created by the terms of the deed or will."   Now, as the testatrix in this case made a devise to the trustee not only in terms amply sufficient to create a fee, but also imposed upon the trustee a duty, to the proper performance of which it was necessary for the trustee to have the fee, it would seem to follow necessarily that the fee then passed to the trustee, and the fact that he was never afterwards called upon to exercise the power of sale cannot affect the question.   He might have been called upon at any moment, up to the time of Mrs. Blount's death to exercise the power, and the testatrix knowing this, and intending to provide for such a contingency, invested him with such an estate

as was necessary to enable him to execute such power, whenever its exercise might be called for.

But it is contended that immediately upon the death of Mrs. Harris the fee descended to and was vested in her heirs as a qualified and determinable fee, subjected to be divested by the exercise of the power of sale, and such power not having been exercised, the fee became absolute in the heirs. Without stopping to inquire whether such an estate could arise *by descent*, inasmuch as the heir is supposed to take the same estate with which the ancestor was clothed, it is sufficient to say that the only authority cited (*Peay* v. *Peay*, 2 Rich. Eq., 409), was a case in which the estate was created by deed, and did not arise by descent. In that case Taylor, in consideration of twenty thousand dollars paid to him by Austin F. Peay, conveyed to a trustee in fee certain property, real estate, "in trust for the use of said Austin F. Peay, his heirs and assigns forever, and to permit the said Austin F. Peay to have and possess the same, and to enjoy the profits thereof, and in trust to convey the same to such person or persons as the said Austin F. Peay shall by deed or will, or other writing under his hand, direct and appoint." The only question was, whether the widow of Austin F. Peay was entitled to dower in the premises, the power of appointment never having been exercised. The court held that the statute executed the use in Austin F. Peay, creating in him a qualified fee, subject to be divested by the exercise of the power of appointment, upon the principle laid down by Lord Eldon in *Maundrell* v. *Maundrell* (10 Ves., 264), "That where there is a power to A to appoint, and till he makes an appointment, or, for want of an appointment, to him and his heirs, the fee in the meantime is vested in him, as that qualified fee which is to yield the estate which may arise out of the execution of the power." The case of Peay *v.* Peay is so wholly different in all its features from the one under consideration, that I do not see how it can afford any authority for the proposition contended for. It was manifestly a futile attempt to defeat the wife's right of dower, and the court so held. There the manifest object of the deed was to create such an estate in Austin F. Peay as would not be subject to dower, while

here it is quite clear that the testator did not intend to create any estate of any kind in her heirs as such.

If, then, the trustee was invested with a fee simple estate by the terms of the will, the next inquiry is, whether such estate has ever passed out of him. Inasmuch as Mrs. Blount died without issue and without having exercised the power of appointment, it is quite clear that this estate has not passed out of the trustee by the provisions of the third clause of the will, and therefore the real question on this branch of the case is, whether the estate in fee has been carried out of the trustee by the operation of the statute of uses. As that statute has no application to personal property (*Harley* v. *Platts*, 6 Rich., 315; *Lanier* v. *Bronson*, 21 S. C., 41), there can be no question as to that class of property. As to the real estate, it seems to me that the overwhelming weight of authority shows that the statute did not execute the use for two reasons: 1st, because a use is limited upon a use; 2nd, because certain duties were required of the trustee which rendered it necessary for the legal estate to remain in the trustee. See *Ayer* v. *Ritter, supra,* and the cases there cited. It follows, therefore, that the estate still remains in the trustee, and can only pass out of him by his own conveyance.

But as it is conceded that the trustee can take no beneficial interest under the will, equity will not permit him to hold the estate for his own benefit, but will raise what is called a resulting trust in favor of the heirs of the testatrix, and the vital question remains, who are such heirs? Are they those who could bring themselves within that class at the time of the death of the testatrix, or are they those only who can bring themselves within such class at the time the resulting trust arises? I do not find any authority directly in point upon this question, but it seems to me upon principle and from the analogies of decided cases, that the trust results in favor of those only who can bring themselves within the class of heirs at the time such trust arises. It is necessary, then, to inquire when such trust arose; and it seems to me clear that it could not arise until after the death of Mrs. Blount, for up to the time of her death she might have had issue, might have died in giving birth to issue, or might have executed the power of appointment in her last moments, and,

therefore, until she was dead there could be no resulting trust. No trust could result in favor of Mrs. Blount, who, at the time of the death of the testatrix, was her sole heir, for as long as she continued to live the trust could not possibly arise. Up to the time of her death it was a mere possibility, not an estate, or even an interest in an estate, with the right of possession postponed.

If this resulting trust had arisen under a deed instead of a will, and the grantor were still living, the trust would have resulted to the grantor; but this right of reverter, so to speak, for strictly speaking it is not a reverter, would not be an *estate* in the grantor capable of being passed by devise or inheritance to the devisee or heir of the grantor, but would be a mere possibility, until the happening of the events which would give birth to the trust. When, however, the event happened which gives rise to the trust, it would become an estate in the grantor, and would *then* be capable of passing by devise or inheritance. Upon the same principle, it seems to me that in this case, where the resulting trust arises under a will, it must result to those who are able to bring themselves under the class of heirs of the testatrix at the time when the trust arises, and as Mrs. Walker was *then* the sole heir of the testatrix, the trust results in her favor and she is entitled to demand from the trustee a transfer of the whole estate to her.

It is analogous to the possibility of reverter after the termination of an estate in fee conditional, which is not an estate, but a mere possibility. It is neither a present nor a future right, but a mere possibility that a right may arise upon the happening of a contingency, which is not the subject of either devise or inheritance. This is because the grant or devise of a fee conditional passes the whole estate to the tenant in fee, leaving nothing in the grantor or devisor which can be the subject of devise or inheritance, and hence it is settled that, upon the termination of such an estate, it goes to those who can bring themselves into the class of heirs of the person creating the estate at the time when the estate terminates, and not to those who were heirs at the time of the death of such person. *Adams* v. *Chaplin*, 1 Hill Ch., 265; *Deas* v. *Horry*, 2 Hill Ch., 244; *Pearse* v. *Killian*, McMull. Eq., 231. Now, if the possibility of reverter after the termina-

tion of an estate in fee conditional enures to the benefit of those who answer the description of heirs of the person creating such estate, at the time when the estate terminates, because a conveyance of such an estate leaves nothing in the grantor or devisor, as the case may be, capable of being devised or inherited, it would seem to follow that, for the same reason, a resulting trust which arises after the conveyance of an estate in fee simple, ought to take the same course.

It only remains to notice some of the cases which seem to be mainly relied on to support a contrary view. *Pulliam v. Byrd* (2 Strob. Eq., 134), was very different from the case under consideration. In that case the testator gave his whole estate to his wife for life, with power to dispose of one half thereof at her death, and the wife having died without exercising the power, the question was as to the proper distribution of the estate. The court holding that a gift to one for life with a general power of appointment will not enlarge the life estate into a fee unless the power is exercised, determined that the will made no disposition of the remainder after the termination of the wife's life estate, and hence such remainder became distributable as in case of intestacy. I do not see how that case has any application to the present. There the testator did not even undertake to dispose of the fee, and, of course, immediately upon his death it descended to his heirs, subject only to the life estate of the wife, and upon the termination of that estate became divisible amongst those in whom it had previously vested. Here, however, the testatrix did dispose of the fee, leaving nothing in her to descend to her heirs. So in *Rochell v. Tompkins* (1 Strob. Eq., 114), the devise was to the wife for life only, "and at her death to return to and become a part of his estate;" and as this reversion, as it was called, was not disposed of by the will, there was clearly a case of intestacy, so far as it was concerned, and it descended immediately to the heirs of the testator, of whom, of course, the wife was one.

In *Seabrook v. Seabrook* (10 Rich. Eq., 495), the testator devised real estate to his son for life with remainder to his issue, and in default of issue he directed that the land should "revert to his estate," and he then devised "the lands so reverting unto

my right heirs forever." The son having died without issue, the question was as to the disposition of the lands so reverting. *Held*, that the heirs of the testator, including the widow, took the reversion, not under the will, but by descent, upon the principle that where a testator devises his estate to those upon whom the law would cast the estate if there were no will, the devise is nugatory and void, and the parties take by descent, and not under the will. This case is not applicable, for the reason that there being no trustee, there was no one in whom the fee could vest, and hence it could not pass out of the testator except upon a contingency which never happened, and remaining in him, it, of course, descended immediately upon his death to his heirs, as his attempt to dispose of it was nugatory. Indeed, the real controversy in that case was whether the widow was barred of any right to share in the reversion by another clause in the will, and as she was unquestionably one of the heirs of the testator, both at the time of his death and at the time the reversion fell in, no such question as that with which we are concerned could have arisen in that case.

In *Glover* v. *Adams* (11 Rich. Eq., 264), followed in *Shaffer* v. *McDuffie* (14 Rich. Eq., 146), property of the wife was conveyed by marriage settlement to trustees in trust for the joint use of husband and wife during coverture, and if the husband survived, to his use during life, and after his death to such person or persons as the wife by will might appoint, and failing such appointment, to her legal heirs and representatives. The wife having died without exercising the power of appointment, leaving the husband surviving, upon his death the question was who were entitled. *Held*, that the remainder, after the termination of the life estates, having become vested in the heirs of the wife at the time of her death, amongst whom was the husband, his share became transmissible to his representatives. There is plainly no analogy between that case and this; for in that case the remainder, *by the terms of the deed*, became vested in the heirs of the wife immediately upon her death, and there could not have been any resulting trust.

In *Farrow* v. *Farrow* (12 S. C., 168), property was devised to a trustee "in trust for the use and benefit of my son, John W.

Farrow, during his life, and at his death to be equally divided between his wife, Emma Farrow, and the children he may leave living, share and share alike." The wife survived the testator, but died before her husband, the life tenant, and the question was, whether the legal representatives of the wife, upon the death of the life tenant, were entitled to any interest in the property. *Held,* that the wife, *under the terms of the will,* took a vested remainder, which, of course, was transmissible to her representatives. So that in that case there was no resulting trust, and I do not see its applicability to the present controversy. Indeed, in none of these cases was there any resulting trust, and the property passed under the terms of the deed or will, while here it does not pass under the terms of the will, but remains in the hands of the trustee to whom it had been devised in fee, subject to a resulting trust which the law raised and which a Court of Equity will require the trustee to execute. The same remarks will apply to the case of *Hicks* v. *Pegues* (4 Rich. Eq., 413), and *Buist* v. *Dawes,* reported in a note to that case.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the case remanded to that court for the purpose of carrying into effect the views herein set forth.

MR. JUSTICE MCGOWAN concurred.

MR. CHIEF JUSTICE SIMPSON, *dissenting.* Mrs. S. I. Harris, late of this State, died in the city of Columbia, leaving of force a last will and testament, a copy of which is found in the record, in which she devised and bequeathed her whole estate, real and personal, to her nephew, the defendant, "Julius H. Walker, and his heirs to the use of the said Julius H. Walker and his heirs, in trust, nevertheless, for her daughter, Mrs. Mary Delia Blount, during the term of her natural life," upon certain terms and conditions, with certain powers of sale, &c., &c., to the trustee, and upon the death of Mrs. Blount the said property, or what remained unconsumed and undisposed of, was bequeathed and devised to the issue of Mrs. Blount, &c., and upon default of issue surviving her, then the same was devised to such person or persons, &c., as the said Mrs. Blount might appoint by her last will and testament, &c., and upon the death of Mrs. Blount, the trusts

of the will were to be regarded as executed, &c., in favor of the person or persons designated as remaindermen in the third clause of the will, without any relinquishment or transfer of trust by the said trustee. At the death of Mrs. Harris, she left surviving her, Mrs. Blount, an only daughter; her next of kin after the daughter being the defendant, Mrs. Walker, an only sister. Mrs. Blount died shortly after her mother, leaving no issue surviving her, and without having executed the power of appointment given to her in the will of Mrs. Harris. See *Blount* v. *Walker*, 28 S. C., 545.

Now, upon this state of facts, the question has arisen, who is entitled to the property mentioned in the will of Mrs. Harris? Should it go to the estate of Mrs. Blount, the daughter who was sole heir of Mrs. Harris at her death; or should Mrs. Walker, the sister of Mrs. Harris, be entitled as the heir when the life estate of Mrs. Blount fell in by her death, leaving no issue and having failed to appoint? His honor, Judge Hudson, who heard this question below, holding that the trusts of the will of Mrs. Harris having failed, the property became intestate property, and Mrs. Blount being the sole heir of Mrs. Harris at her death, was entitled (*Pulliam* v. *Byrd*, 2 Strob. Eq., 135), who having died, leaving her husband and her aunt, Mrs. Caroline Walker, as her heirs, the said property should go to them according to their rights, to wit: the personal property to the husband, the plaintiff, and the real estate one-half each to the husband and Mrs. Walker. The defendants, in their appeal, deny the correctness of this decree, contending that the time for ascertaining the heirs of Mrs. Harris, to whom the property should go as intestate property, was the death of Mrs. Blount, and that Mrs. Walker being the only surviving heir at that time, she became entitled to the whole estate.

As appropriate to the discussion of the issue here, we may state the following legal propositions, which we suppose will be conceded without question: 1st. Where a party dies leaving no last will and testament, he dies intestate as to the property, real and personal, of which he was seized and possessed at the time of his death. 2nd. Where he leaves a last will and testament, and yet fails to dispose of some of his property or of some interest or estate there-

in, he dies intestate as to such undisposed of property or interest or estate. 3rd. While a decedent may by his last will and testament direct that such of his heirs as may be in existence at a certain time after his death shall take his estate (for instance, where he gives a life estate, and then the remainder to go to such of his heirs as may be in existence at the termination of said life estate, said heirs will take the estate), yet where he dies without such a disposition, in other words, intestate, his heirs *at his death* alone can claim. The reason being, that in such last case, the heir claims by operation of law, and not by virtue of the will, and the law never casts the estate upon any except the heir in being at the death of the decedent. An heir is defined to be he upon whom the law casts an estate immediately upon the death of the ancestor. These propositions, we think, present familiar legal principles, and without citing authority now, we may say that, in our opinion, they are absolutely unassailable: and if so, it must follow that if Mrs. Harris died intestate as to any portion of her property, her daughter, Mrs. Blount, being her sole heir at the time of her death, she was entitled thereto, and upon her death it would go to her heirs as decreed by the Circuit Judge.

The vital question, then, in the first instance is, did Mrs. Harris die intestate as to the property in question?' There is no doubt but that Mrs. Harris left a will, and yet it is equally as certain that there was no beneficial interest disposed of to any one, except a life estate to Mrs. Blount. There was a contingency which, if it had happened, would have accomplished a disposition of the whole estate; but it not happening, it was the same as if no such contingent disposition had been attempted, and the will should now be read as if such provision had not been incorporated therein. And suppose the will had been left in such condition, without the suggested disposition incorporated; suppose the will had simply given to Mr. Walker the property in trust for the use and benefit of Mrs. Blount during her natural life and nothing more; could there be a doubt but that Mrs. Harris would have died intestate as to the entire remainder or reversion, and that the law would have cast the same upon her

heir or heirs in being at her death, who in this case was Mrs.
Blount ?   Certainly not.

It is said, however, in the argument of appellants, that Mrs.
Harris did not really die intestate, or at least we so understand
the argument; that, on the contrary, she disposed of her whole
estate, the entire fee, to Mr. Julius H. Walker, and in such way
that even it was put beyond the reach of the statute of uses.
Admit this to be true, to wit, that the entire fee was given to
Mr. Walker, and yet it would not follow, it seems to us, that
Mrs. Harris did not die intestate, or, if so, where is the founda-
tion of Mrs. Walker's claim ?   She certainly cannot claim under
the will of her sister ; her name is not mentioned therein, nor is
there any indication there that Mrs. Harris intended that any
portion of her estate should go to Mrs. Walker.   In fact, if Mrs.
Harris did not die intestate, neither of the parties contending
here is of right before us.   But we think that Mrs. Harris did
die intestate as to all but the life estate given to Mrs. Blount,
and that the fact that her entire property was given in fee to
Mr. Julius H. Walker makes no difference.

It is conceded that no beneficial interest in the property was
given to Mr. Walker, and therefore that he cannot hold it for
himself and enjoy it, although the statute of uses may not be able
to extract it.   It is conceded, too, that he must give it up to
some one.   It must be also conceded that he cannot yield it to
any one as a legatee or devisee under the will, because the will
has provided for no legatee or devisee.   He must give it up, then,
as intestate property, which, of course, he could not be required
to do, unless Mrs. Harris died intestate.   In any event, it being
perfectly clear that Mr. Walker, the trustee, having no beneficial
interest in any part of the estate, and no beneficial interest there-
in being found bequeathed or devised to any one else after the
termination of the life estate of Mrs. Blount, Mrs. Harris died
without a final disposition of said beneficial interest—intestate
thereof—and in such case, though the statute of uses cannot be
invoked as a means of passing the property to the heirs at law,
it would be a reproach to the law and the courts if no way could
be found by which it could be thus passed.   It will be admitted,
however, we suppose, that if Mrs. Harris had simply bequeathed

4—31

and devised her estate to Mr. Walker in trust for Mrs. Blount for life, without giving the fee to him, or without fixing it in him so indelibly as contended for, but had put him in control to manage, &c., for Mrs. Blount, that then the statute of uses would not have carried the legal estate to Mrs. Blount. Nor would such a state of facts have prevented Mrs. Harris from dying intestate as to the estate beyond the life estate.

Now, we think that notwithstanding the entire fee in the property was given to Mr. Walker, and given in such way and by such language as would ordinarily have put it, as we have already said, beyond the reach even of the statute of uses, yet when we look at the purposes of the trust imposed upon Mr. Walker, we are warranted by well established equitable principles, applicable to such cases, to hold that his legal estate should be no larger than demanded by the trust estate under his charge, and although he may have technically a fee, yet said fee will be cut down to the proportions of the said trust estate. And inasmuch as here the trust estate put in charge of Mr. Walker was only a life estate, the complete execution of which could be accomplished by a legal life estate in him, the courts, for the protection of the interests of the heirs of Mrs. Harris, should hold that the fee to Walker has been thus cut down to a life estate, and upon the death of Mrs. Blount, the life tenant, the trust is ended, and the heirs of Mrs. Harris became entitled to the possession of the property. See *Sugden on Powers,* *9, section 5 ; *Perry on Trusts,* section 312 ; several of our own cases, to wit: *Farrow* v. *Farrow,* 12 S. C., 172; *Williman* v. *Holmes,* 4 Rich. Eq., 476. And many other cases might be cited.

The doctrine is fully stated in *Perry on Trusts,* from which valuable work the following is copied at section 312: "In all cases," says Mr. Perry, "where an estate is given to one for the use of another, in such manner that the statute of uses steps in and executes the estate in the *cestui que trust,* the statute executes in the *cestui que trust* only the estate that the first donee or trustee takes, that is, the statute executes or transfers the exact estate given to the trustee. * * * While this is the rule in respect to estates which the statute executes, a very different rule applies to estates upon a trust or use not executed by the statute.

In these cases the extent or quantity of the estate taken by the trustee is determined, not by the circumstances that words of inheritance in the trustee are or are not used in the deed or will, but by the intent of the parties. And the intent of the parties is determined by the scope and extent of the trust. Therefore the extent of the legal interest of a trustee in an estate given to him in trust is measured, not by the words of inheritance or otherwise, but by the object and extent of the trust upon which the estate is given. On this principle two rules of construction have been adopted by the courts: First, wherever a trust is created a legal estate sufficient for the purpose of the trust shall, if possible, be implied in the trustee, whatever may be the limitation of the instrument, whether to him or his heirs or not. And second, although a legal estate may be limited to a trustee to the fullest extent as to him and his heirs, yet it shall not be carried further than the complete execution of the trust necessarily requires." This seems to us to be directly in point, so much so as to justify the long quotation above.

But even if this is an erroneous view of this subject, and it be true that Mr. Julius Walker was invested with the fee, which the statute of uses, with all of its mysterious power to transfer title from one to another, could not touch, yet how could that determine which of the two, whether Mrs. Walker or Mrs. Blount, was the heir of Mrs. Harris, upon whom the law would cast the estate as intestate property? Supposing the fee in Mr. Walker is of the character claimed by appellants' counsel, we think they have clearly demonstrated that it was not executed by the statute; but we fail to see that such a result redounds to the benefit of Mrs. Walker; we fail to see that that fact fixes Mrs. Walker as the heir of Mrs. Harris ahead of Mrs. Blount.

But it is said there was a resulting trust here. What is a resulting trust? In brief, a resulting trust is where no express trust is created by the parties, but the law implies one from the acts of the parties, whether they were intended to create a trust or not. It arises from the operation of law. One example of a resulting trust is when a trust is declared only as to a part of an estate; and nothing is said as to the residue, the residue remaining undisposed of remained to the heir at law. So where a con-

veyance is made upon such trusts as shall be appointed, and there is a default of appointment, or where it is made of a particular trust which fails of taking effect, or is not declared, or is illegal. The trust in such cases would result to the settler or his heirs, and thus it is said in *Perry on Trusts*, section 152 : "If upon a conveyance, devise, or bequest, a trust is declared of a part of the estate only, or the purpose of the trust does not exhaust the whole beneficial interest, the trust in the remaining part or interest will result to the settler or his heirs."

So that if there was a resulting trust here, arising either from the fact that there was a failure of appointment or failure of a particular trust, or that a trust had been declared of only a part of the estate, or that the whole beneficiary interest had not been exhausted by the trust declared, then such resulting trust arising as it does in a last will and testament. which could only take effect at the death of the testatrix, would be a resulting trust in favor of her heirs at law alone. And the question would again return, who is the heir at law ? To which question we repeat the response already made above, taken from that great law writer, Blackstone: "That it is him upon whom the law casts the descent *immediately upon the death of the ancestor.*"

Judgment reversed.