555 S.E.2d 684

H. Clinton SLOAN, Sam Wathen, Jeff Sarajian, Hilbert H. Hawes, Claude T. Hawkins, Andy DeBoer, Carol DeBoer, Lynn Hearl, Precision Southeast, Inc., and Samuel S. Blight, individually, and as class representatives, Appellants,

v.

The CITY OF CONWAY, a body politic, and Grand Strand Water and Sewer Authority, Respondents.

No. 25374.

Supreme Court of South Carolina.

Heard Sept. 25, 2001.

Decided Nov. 13, 2001.

Rehearing Denied Dec. 12, 2001.

See also 535 F.Supp. 928.

Gene M. Connell, Jr., of Kelaher, Connell & Connor, P.C., of Surfside Beach, for appellants.

Danny C. Crowe, of Turner, Padget, Graham & Laney, P.A., and Roy D. Bates, both of Columbia; and Michael W. Battle, of Battle & Vaught, P.A., of Conway, for respondent City of Conway.

Charles E. Carpenter, Jr., and S. Elizabeth Brosnan, of Richardson, Plowden, Carpenter & Robinson, of Columbia; Marian W. Scalise and C. Paige Fowler, of Richardson, Plowden, Carpenter & Robinson, of Myrtle Beach; Arrigo P. Carotti, of McCutcheon, McCutcheon & Baxter, of Conway; and Leo H. Hill, of Hill & Hill, of Greenville, for respondent Grand Strand Water and Sewer Authority.

Justice MOORE.

Appellants are water customers located within the service area of respondent Grand Strand Water and Sewer Authority (Grand Strand). They receive their water service as nonresident customers of respondent City of Conway (City). Appellants' action challenges City's 1996 ordinance raising water rates for all nonresident customers. The trial judge granted summary judgment to City and Grand Strand. We affirm.

## FACTS

Grand Strand was created as a special purpose district in

1971 [1] to distribute water and provide sewer systems in Horry County between the Inland Waterway and the Atlantic Ocean except in designated areas including incorporated municipalities.[2] Grand Strand's authority includes the ability to construct and maintain facilities and to sell water to municipalities.[3]

By resolution in 1975, Horry County expanded Grand Strand's service area west to the Waccamaw River. The expanded area included territory located within three miles of City's limits. *See* S.C.Code Ann. § 6–11–420 (1976) (allowing for county's expansion of special purpose district). City commenced litigation in federal court claiming it had the right to serve this territory.[4] The federal court found City had no claim to the disputed territory since it had failed to challenge Horry County's resolution within the time provided by statute. *See* S.C.Code Ann. § 6–11–480 (1976). Accordingly, City had the right to provide service in Grand Strand's service area only to the extent Grand Strand had already consented. *City of Conway v. Grand Strand Water and Sewer Auth.*, 535 F.Supp. 928 (D.S.C.1982).

By agreements signed in 1982, 1985, and 1989, Grand Strand and City divided the provision of services in certain areas within Grand Strand's territory. Where appellants are located, Grand Strand provides sewer service and City provides water service. All of City's water is purchased wholesale from Grand Strand's Bull Creek plant.

In 1996, Grand Strand raised the rates it charges City for sewer treatment, a charge unrelated to City's cost of providing water service in the disputed area. After studying other municipalities' water rates for out-of-city customers, City decided it could raise revenue to offset this increased cost by increasing its water rates to out-of-city customers. City raised the rate 33%. This rate hike resulted in an increase

---

1. 1971 S.C. Act No. 337.

2. 1971 S.C. Act No. 337, § 2.

3. 1971 S.C. Act No. 337, § 7.

4. The Farmer's Home Administration provided loans to Grand Strand and the United States was a named party.

from the previous rate of 1½ times the in-city rate to double the in-city rate. Grand Strand charges its own customers at cost, a lower rate than appellants must pay.

## ISSUES

1. What is the effect of S.C.Code Ann. § 5–31–1910 (1976)?
2. Does City have a duty to charge reasonable rates to nonresident customers?
3. Did Grand Strand breach a fiduciary duty to its customers?
4. Are appellants entitled to service from Grand Strand as third-party beneficiaries of the federal court's order?
5. Is City's annexation requirement unlawful?

## DISCUSSION

### 1. Ownership of Bull Creek plant and § 5–31–1910

The Bull Creek plant, which produces all of City's water, was built as a joint project by four charter participants, including Grand Strand and City. Grand Strand holds the deed to the Bull Creek plant. In exchange for Grand Strand's construction and maintenance of the plant, each of the other participants agreed to purchase "project capacity" and each bears the cost of water service according to its allocated capacity. The Bull Creek Project Agreement provides that each participant's rights in the project "constitute extensions of their respective water systems." Each participant may sell or lease its allocated capacity.[5]

South Carolina Code Ann. § 5–7–60 (1976), which was enacted as part of the Home Rule Amendment, provides generally that a municipality may contract to furnish and charge for any of its services outside its corporate limits.[6] Appellants

5. Under S.C. Const. art. VIII, § 13(A), any incorporated municipality may agree with any other political subdivision for the joint administration of any function and the sharing of the costs therefor. The provision of water is a constitutionally permitted function of an incorporated municipality. S.C. Const. art. VIII, § 16.

6. "Any municipality may perform any of its functions, furnish any of its services ... and make charges therefor ... in areas outside the corporate limits of such municipality by contract...."

claim, however, under the more specific provisions of S.C.Code Ann. § 5–31–1910 (1976), the agreement allowing City to provide water service to the disputed area is invalid because City does not own the Bull Creek plant. Section 5–31–1910 provides in pertinent part:

Any city or town in this State *owning* a water or light plant may ... enter into a contract with any person without the corporate limits of such city or town but contiguous thereto to furnish such person electric current or water from such water or light plant of such city or town and may furnish such water or light upon such terms, rates and charges as may be fixed by the contract or agreement between the parties....

(emphasis added). The trial judge found City's contract for its allocated capacity in the plant was sufficient ownership to pass muster under this statute. We agree.

In construing a statute, our primary function is to ascertain the intent of the legislature. *Florence County v. Moore*, 344 S.C. 596, 545 S.E.2d 507 (2001). A statutory provision should be given a reasonable and practical construction consistent with the purpose and policy expressed in the statute. *Folk v. Thomas*, 344 S.C. 77, 543 S.E.2d 556 (2001). Reasonably construed, the ownership requirement of § 5–31–1910 simply ensures a municipality's ability to provide water to the persons with whom it contracts. Here, City "owns" an allocated capacity of water produced by the Bull Creek plant. City has a proprietary interest in this allocated capacity as evidenced by City's unilateral ability to sell or lease it.[7] We hold this ownership interest is sufficient to pass muster under the statute.

## 2. Duty to charge reasonable rates.

Appellants contend City has a duty to charge them reasonable rates and the double rate for out-of-city customers is unreasonable because it is unrelated to the cost of providing the service. They claim there is at least a factual issue regarding reasonableness and summary judgment should not have been granted.

---

7. The Bull Creek Project Agreement provides that a participant must offer its allocated capacity first to another participant before disposing of it to another entity.

Our decision in *Childs v. City of Columbia,* 87 S.C. 566, 70 S.E. 296 (1911), is dispositive here. In *Childs,* we held a municipality has "no public duty to furnish water to [a nonresident] at reasonable rates or to furnish it at all." 70 S.E. at 298. Any right a nonresident has arises only by contract. Further, a city actually has "an obligation to sell its surplus water *for the sole benefit of the city at the highest price obtainable." Id.* (emphasis added). We concluded the nonresident plaintiff had no basis to challenge the out-of-city rate which, in that case, was four times the in-city rate. *See also Calcaterra v. City of Columbia,* 315 S.C. 196, 432 S.E.2d 498 (Ct.App.1993) (following *Childs* and holding higher rates for out-of-city water customers cannot be challenged under the S.C. Unfair Trade Practices Act).

Appellants attempt to avoid the holding of *Childs* by relying on S.C.Code Ann. § 5–31–670 (1976) which post-dates that decision. This section provides:

Any city or town or special service district may, after acquiring a waterworks or sewer system, *furnish water to persons for reasonable compensation* and charge a minimum and reasonable sewerage charge for maintenance or construction of such sewerage system within such city or town or special service district.

(emphasis added). Appellants contend this statute modified *Childs* by imposing a reasonableness standard on water rates for nonresident customers.

We find this statute does not affect our holding in *Childs.* We reached our decision in *Childs* even while considering a constitutional provision[8] that required "reasonable compensation" for municipal water service. Such a provision, whether constitutional or statutory, does not apply for the benefit of nonresidents unless expressly provided. *Childs,* 70 S.E. at 298. Here, § 5–31–670 does not expressly apply to nonresident municipal water customers. Absent a specific legislative directive, there is no reasonable rate requirement for water service to nonresidents.

Further, under *Childs,* City's duty to appellants arises only from contract. In this case, the 1982 agreement between City

**8.** 1895 S.C. Const. art. VIII, § 5. The "reasonable compensation" provision is no longer extant.

and Grand Strand provides that City's water rates to the area must be reasonable in that they may be no more than the rates charged all other out-of-city customers. Under the 1989 agreement, City may also determine reasonable rates by "taking into account the capital, administrative, and other applicable costs of the City." Read together,[9] these agreements provide City's rates to the area are reasonable if they are the same as the rates charged all other out-of-city customers or, if rates to the area are higher than those for other out-of-city customers, they are reasonable if based upon increased costs in serving the area in question. Here, appellants are charged the same rates as all other out-of-city customers and City has therefore met its contractual obligation to charge reasonable rates.[10]

Because City has no duty to charge reasonable rates other than by agreement, and its rates comply with this agreement, summary judgment was properly granted.

### 3. Grand Strand's breach of fiduciary duty

■ Appellants claim since they are located in Grand Strand's service area, Grand Strand has a fiduciary duty to them which it breached by allowing City to provide water service. The trial judge found there is no legal authority to find Grand Strand has a fiduciary duty to the residents in its service area.

Assuming Grand Strand has such a duty, appellants have shown no breach. Grand Strand's agreement with City does provide for reasonable rates for customers in its service area,

---

9. The 1989 agreement incorporates the "applicable policies of the City" which includes the earlier 1982 provision regarding reasonable rates.

10. To the extent appellants argue the disparity in treatment between in-city customers and out-of-city customers is unconstitutional, we find their argument without merit. A legislative classification does not violate equal protection if there is any reasonable hypothesis to support it. *Lee v. S.C. Dep't of Natural Resources*, 339 S.C. 463, 530 S.E.2d 112 (2000). Here, out-of-city customers pay no taxes to City and this is a reasonable basis for disparate treatment. To violate due process, the ordinance must have no reasonable relationship to any legitimate governmental interest. *R.L. Jordan Co. v. Boardman Petroleum, Inc.*, 338 S.C. 475, 527 S.E.2d 763 (2000). Raising revenue to meet increasing municipal needs is a legitimate governmental goal and selling water at higher rates to customers who do not pay taxes is rationally related to this goal.

*i.e.* rates must either be the same as those charged all other out-of-city customers or, if higher, must be related to increased costs in providing the service. The trial judge properly found Grand Strand breached no fiduciary duty.

### 4. Effect of the federal court's order

Appellants contend they are entitled to service from Grand Strand as third-party beneficiaries of the federal court's 1982 order which held City could not serve the residents in Grand Strand's service area absent Grand Strand's consent. There has been no violation of this order since Grand Strand consented to City's service in this case.[11] Even if appellants qualified as third-party beneficiaries of the federal court's order, they have been deprived of no benefit bestowed by that order. We find the trial judge properly ruled on this issue.

### 5. Annexation requirement

City's individual contracts with appellants require, as a condition to water service, that appellants agree to annex their property.[12] Appellants claim the trial judge erred in finding this contractual provision valid. We disagree.

Appellants rely on *Touchberry v. City of Florence*, 295 S.C. 47, 367 S.E.2d 149 (1988). In *Touchberry*, we held the municipality could not require annexation as a condition for providing water service. In that case, however, the customers were already entitled to municipal water service as third-party beneficiaries of a franchise agreement between the municipality and the service authority in the disputed area. The franchise agreement specifically required the municipality to provide service in the area whenever requested, conditioned only upon physical and economic feasibility. The municipality therefore could not withhold water service based on annexation.

---

11. The federal court's order does not prohibit Grand Strand from contracting with City. Under its enabling act, Grand Strand has the authority "to make contracts of all sorts and execute all instruments necessary or convenient for the carrying on of the authority." 1971 S.C. Act No. 337, § 7(18).

12. City's administrator testified the annexation provision has not been enforced. Customers who do annex are charged the lower in-city rates.

There is nothing in *Touchberry* holding generally that a city cannot require annexation as a contractual condition for water service. Unlike *Touchberry*, the agreements here between City and Grand Strand do not mandate that City provide water service to individual customers on demand. Further, given a municipality's duty to its own residents under *Childs*, the contractual provision requiring annexation is valid as a means of broadening City's tax base.

Appellants' remaining issues are without merit and we dispose of them pursuant to Rule 220(b), SCACR. *See generally Fraternal Order of Police v. S.C. Dep't of Revenue*, 332 S.C. 496, 506 S.E.2d 495 (1998) (issues raised but not ruled on are not preserved on appeal); *see also Lawson v. S.C. Dep't of Corrections*, 340 S.C. 346, 532 S.E.2d 259 (2000) (civil conspiracy); *E & S Investment Corp. v. Richland Bowl, Inc.*, 264 S.C. 582, 216 S.E.2d 522 (1975) (interest on security deposit).

**AFFIRMED.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.