16546

WALLER *ET AL.* v. WALLER *ET AL.*
(66 S. E. (2d) 876)

*Mr. Eugene Hinson,* of Mullins, *for Appellant,*

*Messrs. McEachin, Townsend & Zeigler,* of Florence, *for Respondents,*

September 25, 1951.

TAYLOR, Justice.

This action was commenced on or about November 24, 1950, seeking a declaratory judgment with reference to the title to a certain tract of land in Marion County, "including 227 acres, more or less, known as the Reddin Smith Tract", and came on to be heard before Honorable G. Badger Baker, Judge of the Twelfth Circuit, who in due time filed his decree dated January 25, 1951, in favor of the respondents; and from which the defendant, Henry Waller, appeals to this Court.

A. N. Waller, frequently referred to in the record as A. N. Waller, Sr., died in 1922 while seized and possess in fee of the land in question, leaving in full force and effect his last will and testament dated January 31, 1920, which was duly admitted to probate. This will, after devising another tract of land to one of the testator's sons, contains in item 3 thereof the following language, which relates to the land in question.

"3. I give, devise and bequeath all the rest and residue of my real property, wherever situated, unto my children, May Waller, A. Walker Waller, Queenie V. Waller, Kate J. Waller and Arbie N. Waller, to have and to hold during their natural lives, and upon the death of any of them his or her share shall pass to the survivors for and during their natural lives, and upon the death of the last survivor, the entire

property shall vest in fee in the issue of the said May Waller, A. Walker Waller, Queenie V. Waller, Kate J. Waller and Arbie N. Waller, and any of them, living at that time, such issue take *per stirpes:* but in the event there shall be no such issues living at that time, then the entire property shall vest in fee in the issue of my daughter, Maggie Snipes, living at that time, who shall take *per stirpes.* * * * the word 'issue' being used herein as a word of purchase."

The words omitted by us in the quotation from item 3 relate to a matter which is not involved in this appeal.

The complaint herein alleges the death of A. N. Waller, Sr., while seized and possessed of the land in question, and leaving the will aforesaid; and further alleges that at the time of his death his heirs-at-law were his children, Arbie N. Waller, Queenie V. Waller, Mae Waller, Kate J. Waller, Maggie W. Snipes and A. Walker Waller, and his grandson, Henry Waller; and that after the death of the testator, Kate J. Waller and A. Walker Waller died leaving no issue; and all persons claiming under them were also made parties to the suit. The complaint also sets forth in detail the respective alleged reversionary interests in fee in the land aforesaid of the heirs of the testator determined as of the date of his death, including the interest of the appellant, Henry Waller, listed as 9/56; all being subject of course to the contingent remainder devised in the quoted excerpt from the will.

The plaintiffs further allege that they are desirous of having the will of A. N. Waller, Sr., construed, so that the interests of all the parties may be determined, and they specifically pray that item 3 be construed.

The defendants above named defaulted, with the exception of the defendant, Dan W. Drew, and the appellant, the defendant, Henry Waller. The defendant, Dan W. Drew, admits the allegations contained in the complaint and joins in the prayer thereof, and further states that he entered into an escrow agreement with the plaintiffs on or about November 8, 1950, under which he has agreed to purchase the

property described in the complaint "as the Reddin Smith Tract," provided that an interpretation of item 3 of the will may be obtained in accordance with the contentions of the plaintiffs.

The appellant, Henry Waller, in due time filed a demurrer to the complaint as failing to state facts sufficient to constitute a cause of action, upon four grounds, which may be briefly stated as follows: (a) the complaint does not state whether or not the life tenants have issue; (b) the action was prematurely brought because the life tenants or some of them are still living; (c) a fee conditional was devised by the will, and the only estate that remained in the testator "is the mere possibility of a reverter"; and (d) it would be impossible at this time to determine what person or persons would take the fee.

The appellant also answered the complaint, reserving his rights under the demurrer, admitting certain formal allegations but specifically denying that there is a reversionary interest in fee in the heirs of the testator "determined as of the date of his death." The answer further alleges that the testator devised every interest he had in the premises, and that at the time of his death (quoting) "no vestiage of title whatsoever remained in him, in that there was only a.mere possibility of reverter, and that an action for construction at this time is premature, since it appears that there are life tenants still living, and that the possibility of issue is never extinct until death and therefore, it would be impossible at this time to determine what person or persons would take the fee."

The decree of the Circuit Judge, to which reference has already been made sets out in detail the terms of the will of A. N. Waller, Sr., and the underlying facts, pursuant to which the demurrer was overruled; and a declaratory judgment was rendered at the conclusion of the decree in the following language:

"It is, Therefore, Ordered, Adjudged and Decreed That as provided in said Will of A. N. Waller, Sr., Mae Waller, Queenie V. Waller and Arbie N. Waller own life estates as tenants in common and are also the co-owners with Maggie W. Snipes, Henry Waller, I. L. Keller, W. W. Keller, H. Edgar Keller, Julia Keller Johnson and Sudie Keller Ligon, of undivided interests in the reversion by way of inheritance, their respective interest being calculated as set forth in paragraph 7 of the plaintiff's complaint, and as contained in this decree, subject, however, to defeasance in the event there is birth of issue of the life tenants, or of Maggie Snipes, and the further contingency of the suvival of issue following the death of the last life tenant as permitted by law."

In addition to the facts hereinbefore stated, it should also be observed, in accordance with appellant's brief, that the respondents, Arbie N. Waller, Queenie V. Waller and Mae Waller, life tenants, are in possession of the lands involved in this action. And it also appears, without dispute, that the life tenants have no issue, and that while at the time of the testator's death his daughter, the respondent Maggie W. Snipes, had two children living, both of them have since died, and she now has no issue. Nevertheless, as alleged in the appellant's answer, the possibility of issue as to any of these persons cannot be presumed to be extinct.

The exceptions filed in behalf of the appellant are eight in number, but counsel does not state in his brief, as required by Rule 8 of this Court, the questions involved in this appeal. However, as we interpert the record, there are really only two questions, to wit: (1) Did the testator retain the reversion in fee or was it only a mere possibility of reverter? (2) Is the action premature?

Referring to the first question, we think the Cicuit Judge was clearly correct in holding that under item 3 of the will the testator gave life estates to his five children therein named jointly, with the provision that upon the death of

the last survivor the property should vest in fee in the issue of the life tenants, and any of them, living at that time, who should take *per stirpes,* and in default thereof that the property should vest in fee in the issue of his daughter, Maggie W. Snipes, living at that time, who should take *per stirpes;* and that the ultimate fee in reversion was in nowise devised; and that certainly the devisees did not take a fee conditional, especially because the testator expressly stipulated that the word "issue" was used "as a word of purchase."

We have, of course, considered carefully the contention of the appellant that instead of the reversion in fee the testator had only the mere possibility of a reverter; and if that were correct, it is clear that those who would take in that event could not now be determined because they would be the heirs-at-law of the testator at the time the contingency happened; and, as was well said in *McFadden v. McFadden,* 107 S. C. 101, 91 S. E. 986, 987, quoting from an earlier case: "Heirs of the same person may be very different individuals at different epochs." But we are of opinion that the Circuit Judge rightly held that the testator retained the reversion, and that his heirs, determinable as of the date of his death, have a present vested interest, although of course subject to be divested in case issue should hereafter be born and should timely survive, as specified in the will.

The Circuit decree so comprehensively and correctly disposes of this issue, that we quote the following therefrom, with full approval, believing that no additions or alterations would be necessary or desirable:

"The law is substantially uniform to the effect that the ultimate fee in every tract of land must rest somewhere. Since the testator never parted with the fee in and by the terms of his Will, it remained in him, immediately passing to his heirs at the time of his death. On the other hand, the mere possibility of reverter exists where a testator parts with the entire fee, but the fee is conditional, so that upon

the possible happening of a certain contingency there would be a reverter in favor of the heirs of the testator as of that time. The distinction thus drawn is logical, and has ample support in the authorities.

"I quote the following from 21 C. J. 1016-1017:

" 'An estate in reversion is the residue of an estate left in the grantor, to commence in possession after the determination of some particular estate granted out by him.

\* \* \*

" 'A reversion should be distinguished from a possibility of reverter which, according to modern technical notions, arises upon a grant so limited that it may last forever or may terminate on a contingency; it is the possibility of having the fee again which exists in the grantor after the grant of a determinable or qualified fee.'

"See also 31 C. J. S., Estates, § 105, at pages 125-126.

"The definitions above quoted are quite accurate in the light of our own decisions, to some of which reference will now be made.

"The case of *Manigault v. Bryan,* 154 S. C. 78, 151 S. E. 199, in which the opinion was delivered by Mr. Justice Cothran, seems to me to be conclusive of the case at bar, to the effect that where a person leaves a will devising his property for life *with contingent remainder,* but failing to dispose of the reversion, the latter will vest in the testator's heirs at the date of his death, and that this rule applies except in cases where the fee has passed out of the testator. There are many authorities cited in the opinion supporting this conclusion.

"The Court, in the case of *Vaughan v. Langford,* 81 S. C. 282, 62 S. E. 316, 317, opinion by Mr. Justice Woods, appears to state the distinction between a reversion and a possibility of reverter with great clarity; and I quote the following from this opinion:

" 'The possibility of a reverter, after the termination of a fee conditional, being a mere possibility, is not an estate.

It is thus described in *Blount v. Walker,* 31 S. C. [13], 27, 9 S. E. 804: "It is neither a present nor a future right, but a mere possibility that a right may arise upon the happening of a contingency, which is not the subject of either devise or inheritance. This is because the grant or devise of a fee conditional passes the whole estate to the tenant in fee, leaving nothing in the grantor or devisor which can be the subject of devise or inheritance; and hence it is settled that, upon the termination of such an estate, it goes to those who can bring themselves into the class of heirs of the person creating the estate at the time when the estate terminates, and not to those who were heirs at the time of the death of such person." *Adams v. Chaplin,* 1 Hill Eq. 265; *Deas v. Horry,* 2 Hill Eq. 244; *Pearse v. Killian,,* McMul. Eq. 231.'

"I have carefully examined every case cited by counsel for the defendant, and none of these cases seem to me to be in point, because they do not relate to the devise of a life estate, with contingent remainder over, without disposing of the reversion; but they relate to the creation of a fee conditional estate, where nothing remained which could be devised. In other words, the testator had parted with the fee, and there was only a possibility of reverter, which constitutes no estate.

"One of the cases cited by counsel for the defendant is that of *Corley v. Hoyt,* 116 S. C. 110, 107 S. E. 34, in which the Supreme Court held that the deed involved in that case conveyed a fee conditional estate, and hence the 'whole estate was gone from' the grantor. But a much more recent case is that of *Burnett v. Snoddy,* 199 S. C. 399, 19 S. E. (2d) 904, in which the Supreme Court unanimously held that upon the death of the grantee of a fee conditional estate without heirs of his body, the estate reverts to those who can bring themselves at that time into the class of heirs of the person creating the estate, and not to those who were heirs at the time of the death of such person; and moreover, that the possibility of reverter in a fee conditional estate was

neither a present nor future right, but is a mere possibility, which does not constitute an estate and cannot be inherited."

This brings us down to the consideration of the second question, namely, Is the action premature? But our answer to the first question in itself strongly tends to show that the action is by no means premature. For since the respondents have present, vested interests in the reversion affecting the land in question, although subject to be divested as hereinbefore stated, they are entitled to invoke the declaratory aid of the Court. And the suggestion that the matter should be delayed until the death of the last surviving life tenant would result in a complete denial of the legal rights of the respondents, especially with regard to the three life tenants who also have substantial interests in the reversion.

While the pleadings make no reference to any statute under which the action before us was brought, Judge Baker concluded, and correctly so, that it was brought under the Uniform Declaratory Judgments Act. And we may add that the action also conforms to two other prior statutory enactments which were not repealed by the Uniform Act, to wit, Code Section 660 and Code Sections 878-884.

Code Section 660 provides in substance that no action wherein the construction of a deed, a will or written contract is sought or involved shall be open to the objection that a merely declaratory judgment is sought, and that the Court may make binding declarations of the rights of parties to such action; and we held in the case of *Des Portes v. Des Portes,* 157 S. C. 407, 154 S. E. 426, that pursuant to this statute equity may entertain a bill to construe a will.

Code Sections 878-884 extend the scope of the ancient equitable suit to quiet title, resulting in a judgment of a declaratory nature. *Tolbert v. Greenwood Cotton Mill,* 213 S. C. 43, 48 S. E. (2d) 599.

The Uniform Declaratory Judgments Act, approved and effective April 7, 1948, Acts 1948, 45 St. at Large, page 2014, however, covers the whole field of declaratory judgments. It is unnecessary to state the terms thereof in detail, but we may observe that it provides that Courts of record within their respective jurisdictions are authorized to declare rights, status, and other legal relations whether any further relief is or could be claimed, and that the declaration "may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree." And it is specifically provided that any person interested under a will may have determined any question of construction or validity arising thereunder.

We are of opinion that the declaratory judgment rendered by the Circuit Judge is in full conformity with the true intent and meaning of the Uniform Act, as well as the previous statutory remedies to which we have referred; and we are unable to find anything in the record sustaining the theory that the action is premature.

It is quite true that a declaratory judgment should not deal with moot or abstract matters or constitute a merely advisory opinion, and to this end there should be an existing controversy, or at least the "ripening seeds of a controversy," as stated in 16 Am. Jur. 284, but the basic purpose of the act is to provide for declaratory judgments without awaiting a breach of existing rights. The presence of an actual controversy in the case at bar is sufficiently shown by the pleadings in behalf of the appellant and the brief of his counsel.

The declaratory judgment under review is manifestly final and binding, because nothing which may hereafter occur can in anywise affect the same. If at the end of the last life estate the contingent remainder falls in, then under the terms of the declaratory judgment the owners of the reversion will have the indefeasible title to the prop-

erty; but on the other hand, if issue should hereafter be born to any of the life tenants or Maggie W. Snipes, and such issue survives the life tenant, the contingent remainder will then be vested and the reversion would be defeated; all in accordance with the terms of the declaratory judgment, and also of the will of the testator.

Furthermore, we are of opinion that the present action is by no means premature, but is quite timely, because the respondents are entitled to a judgment as to the extent of their interests, which, besides the life estates, are transmissible by deed, will or inheritance; and obviously their value would be affected by the declaratory decree. "Reversions are descendible, alienable or assignable by deed, conveyance, and grant, and devisable." 33 Am. Jur. 669. On the other hand, if we should dismiss this action as premature, the effect would of course be distinctly injurious to the respondents, with no benefit whatever to the appellant.

The justice and fairness of the Circuit Court's declaratory decree appears to us to be quite obvious. We are also mindful in this connection that the Uniform Declaratory Judgments Act expressly provides that the same "is to be liberally construed and administered."

Our conclusion therefore is that all the exceptions of the appellant should be overruled and the judgment of the Circuit Court affirmed, and it is so ordered.

BAKER, C. J., and FISHBURNE, STUKES and OXNER, JJ., concur.