## 19481

The CITIZENS AND SOUTHERN NATIONAL BANK OF SOUTH CAROLINA as Trustee under agreement with Ida B. Urquhart, v. Stanley AUMAN, et al., of whom Evelyn Ewing, et al., are Appellants, and Stanley Auman and Margaret Auman are, Respondents.

(191 S. E. (2d) 511)

264

*Messrs. William H. Gibbes,* of *Berry, Lightsey and Gibbes,* and *John H. Lumpkin, Jr.,* of *Boyd, Bruton, Knowlton, Tate & Finlay,* Columbia, *for Appellants,*

*Messrs. Kermit S. King,* and *Donald W. Tyler,* of *King & Brooks,* Columbia, and *Rawl, Purcell & Harman,* of Lexington, *for Respondents,*

September 11, 1972.

LEWIS, Justice.

This matter involves the construction of the terms of a trust created by the late Mrs. Ida B. Urquhart, of Columbia, South Carolina, for the purpose of determining what persons are entitled to the remaining trust assets after the termination of life estates provided for in the trust instrument. Our statement of the material facts, which are undisputed, largely follows that contained in the statement of

the case; and our disposition of the legal issues follows, to some extent, the order of the lower court.

On August 15, 1965, Mrs. Urquhart (donor) and The Citizens and Southern National Bank of South Carolina (trustee) entered into a Trust Agreement by which a revocable trust was created. Under its terms, the trustee was to hold, manage, invest and reinvest the trust estate, and collect the income. The income was to be paid to the donor during her lifetime, with the power granted to the trustee, in its sole discretion, to invade the principal of the estate if it became necessary to provide for the donor's needs.

The trust instrument further provided that, upon the death of the donor, ten (10%) percent of the trust estate would be paid to three designated charities, with the remaining ninety (90%) percent to be held in trust by the trustee and the income therefrom paid to Stanley Auman, the donor's son, during his lifetime and, after his death, to Margaret Auman, the son's wife, for her lifetime. The trustee was also given the power, in its sole discretion, to invade the principal of the trust estate on behalf of either of these beneficiaries if it decided that it was in the best interest of the beneficiary affected.

Under the terms of the trust, the grantor agreed to execute all such instruments as might be necessary "to vest the trustee with full title to the property being transferred to it."

With reference to the disposition of the trust assets after the termination of the mentioned life estates, the trust agreement provided that, after the deaths of the donor, Stanley Auman, and Margaret Auman, the life beneficiaries,

"this trust shall terminate and the trust estate shall be paid over in equal shares to *such* of the nieces and nephews of the grantor *as are listed in Schedule B attached hereto*. In the event any *such* niece or nephew is deceased at that time, *his* or *her* share shall be paid over *per stirpes* to his or her children; if a *listed* niece or nephew is deceased without leaving a child or children, then *his* or *her* share shall

go to the surviving *listed* nieces and nephews in equal shares." (Emphasis added.)

At the time of the execution of the trust agreement, no Schedule B was attached and, at no time thereafter, did the donor furnish a Schedule B listing any nieces or nephews to whom the trust estate should be paid upon the termination of the life estates and the trust.

On April 12, 1958, the donor executed her Will in which she gave her household furnishings and possessions of a personal nature, such as clothes and jewelry, to her son, Stanley Auman. The remainder of her property, not previously deposited with the trustee, was devised to the trustee to be added to the trust estate and administered under the previous Trust Agreement. This will, executed almost two years after the execution of the Trust Agreement, did not designate any nieces or nephews to receive the estate upon the termination of the trust.

After the execution of her will the donor was declared incompetent. Her competency at the time and preceding the execution of the will, however, is not questioned. She died on August 25, 1968.

As pointed out, at no time did the donor furnish the Schedule B referred to in the trust instrument, or in any manner designate any nieces or nephews to take the trust estate after the death of the life beneficiaries and the consequent termination of the trust.

After the death of the donor, the trustee brought this action for declaratory judgment against Stanley Auman, his' wife, Margaret Auman, and the nieces and nephews of the grantor, seeking a determination of what persons are entitled to share in the remainder of the trust assets after the termination of the life interests, since no nieces and nephews were designated to take; and what restrictions, if any, on the discretion of the trustee in invading the principal of the trust, are necessary and appropriate for the protection of the persons entitled to the remaining interest, if

other than Stanley Auman who was the sole heir at law of the donor at the time of her death.

The trustee takes a position of neutrality and the controversy is, in effect, between Stanley Auman, the sole heir at law of the donor at the time of her death, and her nieces and nephews. The question at issue is basically: Who takes the trust property after the falling in of the life interests—Stanley Auman or the nieces and nephews.

Auman contends that the trust instrument created, after the life interests in him and his wife, a right of reversion in the donor, the reversion subject to being defeated by the donor's designation of nieces and nephews to take the estate after the termination of the trust; and that, since the reversion was not defeated by such designation of nieces and nephews, it passed at the death of the donor to him as her sole heir at law.

The nieces and nephews take the position, on the other hand, that the trust instrument created a remainder interest in the trust estate, which, under the holding of *Blount v. Walker,* 31 S. C. 13, 9 S. E. 804, passed by way of resulting trust to the heirs of the donor—nieces and nephews—at the time of the termination of the life estates and the trust.

The issues were referred to the master who held that (1) the donor did not make a gift over to the nieces and nephews, as a class, by reason of her failure to furnish Schedule B designating which of the nieces and nephews she wished to take; but that (2), upon the termination of the life estates, the nieces and nephews should take as beneficiaries of a resulting trust; and (3) the trustee should continue its policy in the administration of the trust.

Upon exceptions to the report of the master, the lower court affirmed the conclusion of the master that there was no gift over to nieces and nephews, but reversed the finding that the nieces and nephews, upon the termination of the life estates, should take the remaining portion of the trust

estate as beneficiaries of a resulting trust. Instead, the lower court held that, under the trust instrument, the donor held a reversion in the trust estate, which, at the time of her death, vested in her son, Stanley Auman, as her sole heir at law. From this decision the nieces and nephews have appealed.

Stanley Auman and his wife were beneficiaries of the income from the trust estate for life. The determination of the issue in this appeal turns largely upon the nature of the estate created upon the termination of the life estates. This must be determined from the trust instrument. Of course, in construing the instrument, our primary concern is to ascertain and effectuate the intention of the creator of the trust, unless it is in conflict with settled principles of law. 90 C. J. S. Trusts § 162a.

We agree with the concurrent holding of the master and the lower court that the failure of the donor to designate *such* nieces and nephews as she desired to take did not constitute a class gift in favor of her nieces and nephews.

As pointed out by the lower court, there are situations where one (a donor) creates a power of appointment in another person (a donee) by which the donee is obligated to select members of a class to be the beneficiaries of an estate. In such cases, it is commonly held that where the donee fails to designate the members of a class who are to be the beneficiaries, the estate is passed in equal shares to all members of the class. See: Restatement, (2d), Trusts, Section 27; *Withers v. Yeadon,* 1 Rich Eq. 324.

This case obviously differs from the foregoing situations. Here, a power of appointment was not given by the donor to a donee to select the members of a class which would take. Instead, the donor reserved unto herself the right to designate which nieces and nephews, if any, should benefit.

The trust instrument directed that the remaining interest in the trust property be paid such of the nieces and nephews

as are listed in the attached Schedule B. This provision effectively reserved to the donor the right to designate or select those of her nieces and nephews who would take any part of her estate after the termination of the trust. The language used clearly evidenced an intent that only those nieces and nephews listed in Schedule B should take. The failure to furnish a Schedule B, or in any way to designate any niece or nephew, indicated either a decision on the donor's part that none would share in her estate or that she never decided which to designate. Certainly, there is nothing in the trust instrument to manifest an intention that all of the nieces and nephews should automatically benefit.

Neither did the donor convey the fee to the trustee. The trust instrument contained no words of inheritance, created a revocable trust, and, most important, the power to designate those who would take the fee after the life estates was to be exercised by the donor. The retention of this right to designate who would take the fee necessarily imports that the donor intended to retain the fee, as she could not direct its disposition unless it remained in her. Certainly, the creation of a revocable trust indicated that the donor intended to retain ultimate control of the estate.

The fee was not specifically granted to the trustee and was not necessary to the complete execution of the trust created. Since this is true no greater estate will be implied than is necessary to accomplish the purposes of the trust.

The language in the trust instrument that the trustee is impowered and directed to "hold, manage, invest and reinvest the trust estate," to "invade the principal" for the benefit of the life beneficiaries, "to pay over" the trust assets at the termination of the trust, and that the donor would execute all instruments necessary to vest the trustee with *full* title to the property is not inconsistent with a retention of the fee in the donor. We have recognized that a life estate with the power of disposal may be validly created. *Thomason v. Hellams,* 233 S. C. 11, 103 S. E. (2d)

324. It is clear that the donor gave to the trustee only such estate as necessary to effectuate her purpose of providing for the life beneficiaries. The holding of the fee by the trustee was not required to accomplish that purpose.

The donor, Mrs. Urquhart, therefore, at the time of her death, held a reversion in the trust estate.

Since the interest held by the donor was a reversion, it passed, at the time of her death, to her son who was her sole heir at law. *Waller v. Waller,* 220 S. C. 212, 66 S. E. (2d) 876; *Manigault v. Bryan,* 154 S. C. 78, 151 S. E. 199.

The decision in *Blount v. Waller, supra,* 31 S. C. 13, 9 S. E. 804, relied upon by the master and the appellants does not dictate a different conclusion. In Blount, the fee was given to the trustee, so there could be no intestate estate in the donor. Here, the donor did not part with the fee and the reversion passed as intestate estate to her heirs at law at the time of her death.

The only other question argued is whether the trust can be terminated by mutual action of the life beneficiaries. We agree with the lower court that, since no such action has been taken by the life beneficiaries, a decision of the question at this time would be premature and advisory only.

The judgment of the lower court is accordingly affirmed.

Moss, C. J., and Bussey, Brailsford and Littlejohn, JJ., concur.