563 S.E.2d 651

RIVERWOODS, LLC, North Bluff North Charleston, Limited Partnership, Brackenbrook North Charleston Limited Partnership, Arthur Booth, M.D. and Linda M. Booth, Respondents/Appellants,

v.

The COUNTY OF CHARLESTON, Peggy A. Moseley in her official capacity as Charleston County Auditor, and D. Michael Huggins in his official capacity as Charleston County Assessor, Appellants/Respondents.

No. 25462.

Supreme Court of South Carolina.

Heard March 20, 2002.
Decided May 6, 2002.

Samuel W. Howell, IV, of Howell & Linkous, LLC, of Charleston, County Attorney Joseph Dawson, III, and Assistant County Attorney Bernard E. Ferrara, Jr., of Charleston, for appellants/respondents.

G. Trenholm Walker, Andrew K. Epting, Jr., Clayton B. McCullough and Matthew D. Hamrick, of Pratt–Thomas, Epting & Walker, P.A., of Charleston, for respondents/appellants.

Burnet R. Maybank, III, of Nexsen Pruet Jacobs & Pollard, LLC, of Columbia, for amicus curiae, State Chamber of Commerce.

Justice WALLER:

Respondents-appellants (collectively "Taxpayers") brought this action against the County of Charleston, Peggy A. Moseley in her official capacity as Charleston County Auditor, and D. Michael Huggins in his official capacity as Charleston County Assessor (appellants-respondents, collectively "the

County") challenging a county ordinance which grants a property tax exemption solely to owner-occupied primary residences. Taxpayers moved for summary judgment, which the trial court granted. The County appeals on the merits, and Taxpayers appeal from the trial court's denial of injunctive relief. We affirm.

## FACTS

In November 2000, Charleston County adopted Ordinance 1163 ("the Ordinance"). The Ordinance grants an exemption from *ad valorem* property taxation to owner-occupied primary residences where the property's value increased over 15 percent due to a county-wide reassessment.[1] The exemption imposes a tax cap on these properties such that they are not taxed on any increase in value over 15 percent.

The Ordinance was enacted pursuant to S.C.Code Ann. § 12–37–223A (Supp.2001) ("the Enabling Act"). The Enabling Act states in pertinent part:

As authorized by Section 3, Article X of the South Carolina Constitution, the General Assembly hereby authorizes the governing body of a county by ordinance to exempt an amount of fair market value of real property located in the county sufficient to limit to fifteen percent any valuation increase attributable to a countywide appraisal and equalization program conducted pursuant to Section 12–43–217. *An exemption allowed by this section does not apply to:*

(1) real property valued for property tax purposes by the unit valuation method;[2]

(2) value attributable to property or improvements not previously taxed, such as new construction, and for renovation of existing structures;

(3) property transferred after the most recent countywide equalization program implemented pursuant to Section 12–

1. Every five years, real property in a county is reappraised and taxes are assessed on the newly appraised values. *See* S.C.Code Ann. § 12–43–217(A) (2000) ("... once every fifth year each county or the State shall appraise and equalize those properties under its jurisdiction....").

2. According to Taxpayers, the only property valued by the unit valuation method is property of utility companies.

43–217; provided, however, at the option of the governing body of a county which is in the process of first implementing a countywide equalization program under Section 12–43–217, property transferred on or after January first of the year of implementation of the most recent countywide equalization program.

§ 12–37–223A(A) (emphasis added).

The County decided to enact the Ordinance pursuant to the Enabling Act; however, it chose to limit the exemption solely to owner-occupied primary residences. *See* S.C.Code Ann. § 12–43–220(c) (2000).[3] In the text of the ordinance, the County set forth several reasons for its decision to selectively grant the tax exemption to these residential properties only.[4]

Taxpayers are: (1) three corporate entities which each own an apartment complex in Charleston County; and (2) the Booths who are residents of Georgia but own a second home in Kiawah Island. Taxpayers are all taxed at a six percent assessment ratio. Due to the countywide reassessment completed in 2001, their properties increased in value anywhere from 31.8 percent to 138.4 percent.

Prior to the countywide assessment which was completed in 2001, the total value of all assessed real property in Charleston County was approximately $15.6 billion. For the 2001 tax year, the total value of all assessed real property in the County was approximately $25.4 billion. As a result of the Ordinance, $2.4 billion was exempted from taxation. Thus, the applicable millage rates for tax year 2001 were calculated, and taxes were assessed, based on approximately $23 billion worth of property. In addition to being excluded from application of the exemption, Taxpayers alleged that implementation of the

---

**3.** Property classified as owner-occupied primary residences under § 12–43–220(c) is taxed on an assessment equal to four percent of the fair market value of the property. *Id.* All other real property not specifically classified under section 12–43–220 is taxed at six percent. *See* § 12–43–220(e).

**4.** For example, the Ordinance states that "County Council recognizes the rapid escalation of residential property values in many areas of Charleston County" and "the application of the exemption will encourage homeownership by mitigating the impact of rapidly escalating values on property taxation of owner-occupied homes."

exemption required the County to set higher millage rates resulting in higher taxes for them.

Taxpayers filed a complaint seeking a declaratory judgment that the ordinance was invalid. Although they alleged several causes of action in their complaint, Taxpayers moved for summary judgment to invalidate the ordinance based upon two grounds: (1) the ordinance violated the enabling legislation; and (2) the ordinance violated specific tax provisions of the South Carolina Constitution. As relief, Taxpayers requested an injunction if the trial court granted summary judgment, or, if their motion was denied, a preliminary injunction.

The trial court found in favor of Taxpayers on both grounds asserted. However, the trial court refused to grant their request for an injunction or a writ of mandamus. Instead, citing the hardship on the County and potential for reversal on appeal, the trial court issued a writ of supersedeas staying enforcement of the order. Taxpayers subsequently petitioned this Court for a writ of supersedeas to dissolve the supersedeas issued by the trial court. We denied Taxpayers' request. We granted the parties' joint motion to expedite the case.

## ISSUES

The County's appeal raises the following two issues:

Did the trial court err in ruling that the Ordinance conflicted with, or exceeded the power granted by, the Enabling Act?

Did the trial court err in ruling that the Ordinance violated the South Carolina Constitution?

On cross-appeal, Taxpayers raise the following issue:

Did the trial court err in refusing to grant injunctive relief?

## DISCUSSION

### 1. Does the Ordinance violate the Enabling Act?

The County argues that the Ordinance does not violate the Enabling Act. The County maintains that: (1) the Ordinance is a valid exercise of discretion as granted by Home Rule powers; and (2) the Enabling Act did not require the County

to apply the exemption to all real property in Charleston or prohibit the County from applying the exemption to only certain classes of property. We disagree and find the trial court correctly concluded that the Ordinance exceeded the authority granted by the Enabling Act.

■ Determining whether a local ordinance is valid is a two-step process. The first step is to determine whether the county had the power to adopt the ordinance. If no power existed, the ordinance is invalid. If the county had the power to enact the ordinance, the second step is to determine whether the ordinance is consistent with the Constitution and general law of the State. *Bugsy's, Inc. v. City of Myrtle Beach,* 340 S.C. 87, 93, 530 S.E.2d 890, 893 (2000).

■ At issue is whether the Ordinance is consistent with the Enabling Act, and this necessarily involves the statutory construction of the Enabling Act. The cardinal rule of statutory construction is for the Court to ascertain and effectuate the intent of the legislature. *E.g., Grant v. City of Folly Beach,* 346 S.C. 74, 551 S.E.2d 229 (2001). The trial court found that if a county enacted an ordinance pursuant to the Enabling Act, then all property, except those properties specifically listed under subsections 12–37–223A(A)(1), (2) & (3), was intended to receive the exemption. We agree.

■ "The canon of construction '*expressio unius est exclusio alterius*' or '*inclusio unius est exclusio alterius*' holds that 'to express or include one thing implies the exclusion of another, or of the alternative.'" *Hodges v. Rainey,* 341 S.C. 79, 86, 533 S.E.2d 578, 582 (2000). As we explained in *Hodges v. Rainey:* "'The enumeration of exclusions from the operation of a statute indicates that the statute should apply to all cases not specifically excluded. Exceptions strengthen the force of the general law and enumeration weakens it as to things not expressed.'" *Id.* at 87, 533 S.E.2d at 582 (quoting Norman J. Singer, *Sutherland Statutory Construction* § 47.23 at 227 (5th ed.1992)).

Citing *West Virginia Pulp & Paper Co. v. Riddock,* 225 S.C. 283, 82 S.E.2d 189 (1954), the trial court employed the principle of *expressio unius est exclusio alterius* to find that the Enabling Act granted only three exceptions to the application of the exemption. Thus, the trial court found that the County

was unauthorized to enact an ordinance which, in effect, excluded all real property other than owner-occupied primary residences.

██ In *Riddock,* a manufacturer challenged Charleston County's demand for taxes levied for the servicing of county bonds. The manufacturer argued it was entitled to a statutory exemption from these taxes. The statute stated that an "[e]xemption from county taxes (*but not from school taxes or public service district taxes*) is hereby granted to [certain manufacturing plant construction]." *Id.* at 285, 82 S.E.2d at 189 (emphasis added). The trial court in *Riddock* applied the principle *expressio unius est exclusio alterius* and concluded that "the Legislature must have intended that the exemption should apply to taxes levied for all County purposes save for those purposes specifically excluded." *Id.* at 287–88, 82 S.E.2d at 189. In other words, except for school and public service district taxes (the express exceptions), the exemption applied, and taxes servicing county bonds were exempt for qualifying manufacturers. The Court agreed with the trial court and adopted its order as the opinion for the Court.

Likewise, the trial court in the instant case appropriately applied *expressio unius est exclusio alterius* and correctly decided that if a county chose to enact an ordinance granting the exemption, the Legislature intended for all property, except the three enumerated exceptions listed in subsections 12–37–223A(A)(1), (2) & (3), to benefit from the exemption. *Hodges v. Rainey, supra* (the enumeration of exclusions from the operation of a statute indicates that the statute should apply to all cases not specifically excluded); *Riddock, supra* (tax exemption statute specifically listing exceptions to exemption indicate all other cases intended for exemption). Here, however, the County enacted an ordinance which effectively created a fourth exception—all real property other than owner-occupied primary residences.

The County argues it had the discretion to enact the Ordinance in the manner it did due to principles of Home Rule. We disagree.

Article VIII of the South Carolina Constitution "mandates 'home rule' for local governments." *Quality Towing, Inc. v. City of Myrtle Beach,* 340 S.C. 29, 37, 530 S.E.2d 369, 373 (2000). Section 17 of Article VIII provides that "all laws

concerning local government shall be liberally construed in their favor." S.C. CONST. art. VIII, § 17. Pursuant to S.C.Code Ann. § 4–9–25 (Supp.2001), counties enjoy certain powers:

> All counties of the State, in addition to the powers conferred to their specific form of government, have authority to enact regulations, resolutions, and ordinances, *not inconsistent with the Constitution and general law of this State,* including the exercise of these powers in relation to health and order in counties or respecting any subject as appears to them necessary and proper for the security, general welfare, and convenience of counties or for preserving health, peace, order, and good government in them. The powers of a county must be liberally construed in favor of the county and the specific mention of particular powers may not be construed as limiting in any manner the general powers of counties.

(Emphasis added).

The County contends that section 4–9–25 grants it wide discretion to decide how to apply the exemption. The County, however, misapprehends the issue before the Court. At issue is whether the Ordinance violated the enabling legislation.[5] It is clear from a plain reading of the Enabling Act that the only real discretion which was conferred upon the County was whether to adopt the ordinance. Once adopted, however, it must be consistent with the general law of the State, i.e., the enabling legislation. *See Bugsy's, Inc. v. City of Myrtle Beach, supra* (to be valid, an ordinance must be consistent with the Constitution and general law of the State); *cf. Bostic v. City of West Columbia,* 268 S.C. 386, 390, 234 S.E.2d 224, 226 (1977) ("enabling legislation is not merely precatory, but prescribes the parameters of conferred authority"). As discussed above, the Ordinance is inconsistent with the Enabling Act. Consequently, the County's assertions regarding Home Rule provide it no refuge.

---

**5.** The Enabling Act was passed pursuant to Article X, Section 3 of the South Carolina Constitution: "In addition to the exemptions listed in this section, the General Assembly may provide for exemptions from the property tax, *by general laws applicable uniformly to property throughout the State and in all political subdivisions,* but only with the approval of two-thirds of the members of each House." S.C. CONST. art. X, § 3 (emphasis added).

In sum, we hold that the Ordinance conflicted with the Enabling Act because it effectively created an additional exception not intended by the Enabling Act.[6]

## 2. Did the trial court err in ruling that the Ordinance violated the South Carolina Constitution?

■ The trial court also found that because the Ordinance resulted in the taxation of owner-occupied primary residences at less than their fair market value, the Ordinance violated Article III, § 29 and Article X, § 1 of the South Carolina Constitution.[7] The County argues that the trial court erred.

■ It is this Court's firm policy to decline to rule on constitutional issues unless such a ruling is required. *E.g., In re McCracken,* 346 S.C. 87, 551 S.E.2d 235 (2001). Our holding in Issue 1, *supra,* is dispositive to this appeal; we therefore refrain from ruling on the constitutional questions raised. *Id.*

## 3. Did the trial court err in refusing to grant injunctive relief?

The trial court refused to order injunctive relief, and *sua sponte* issued a writ of supersedeas staying the enforcement of

---

6. The trial court additionally held that the Ordinance violated the Enabling Act because in application it failed to "exempt an amount of fair market value of real property located in the county sufficient to limit to fifteen percent any valuation increase attributable to a county-wide appraisal and equalization program." § 12–37–223A. Since we conclude the Ordinance violates the Enabling Act based on the principle of *expressio unius est exclusio alterius,* it is not necessary to address this alternative holding of the trial court.

7. These sections provide as follows in pertinent part:
    *All taxes* upon property, real and personal, *shall be laid upon the actual value of the property taxed,* as the same shall be ascertained by an assessment made for the purpose of laying such tax.
    S.C. CONST. art. III, § 29 (emphasis added).
    The General Assembly may provide for the ad valorem taxation by the State or any of its subdivisions of all real and personal property. The assessment of all property shall be equal and uniform in the following classifications:
    . . .
    (3) The legal residence and not more than five acres contiguous thereto *shall be taxed on an assessment equal to four percent of the fair market value* of such property.
    S.C. CONST. art. X, § 1 (emphasis added).

its order declaring the Ordinance unlawful. Taxpayers argue that the trial court erred in denying their request to issue a writ of mandamus or an injunction. We disagree.

The primary purpose of a writ of mandamus is to enforce an established right and to enforce a corresponding imperative duty created or imposed by law. *Porter v. Jedziniak*, 334 S.C. 16, 18, 512 S.E.2d 497, 498 (1999) (citing *Willimon v. City of Greenville*, 243 S.C. 82, 132 S.E.2d 169 (1963)). To obtain a writ of mandamus requiring the performance of an act, the petitioner must show: (1) a duty of respondent to perform the act; (2) the ministerial nature of the act; (3) the petitioner's specific legal right for which discharge of the duty is necessary; and (4) a lack of any other legal remedy. *Id.*

Taxpayers were not entitled to a writ of mandamus. Although they argue the County had a "clear ministerial duty" to include the exempted value in the calculation of taxes, it is patent that this duty was far from clear; indeed, the instant appeal attests to the fact that it was unclear as to whether the exemption was lawful or not. "When the legal right is doubtful ... a writ of mandamus cannot rightfully issue." *Willimon v. City of Greenville*, 243 S.C. at 86, 132 S.E.2d at 170.

Taxpayers also contend that once the trial court declared the Ordinance invalid, they were entitled to an injunction. We find that because Taxpayers have an adequate remedy at law, the trial court correctly denied the injunction.

Although a taxpayer may enjoin the collection of an illegal tax if he is afforded no adequate legal remedy, *see Ware Shoals Mfg. Co. v. Jones*, 78 S.C. 211, 58 S.E. 811 (1907), where there is a legal remedy by payment under protest, then an injunction is inappropriate. *E.g., Textile Hall Corp. v. Riddle*, 207 S.C. 291, 300, 35 S.E.2d 701, 704 (1945).

The County argues that Taxpayers have an adequate legal remedy by paying the taxes under protest. *See* S.C.Code Ann. § 12–60–2550 (2000) (allowing taxpayer to pay under protest 80 percent of challenged property tax). Taxpayers argue that every property owner in Charleston County paying *ad valorem* taxes is affected. They contend that, under these circumstances, paying taxes under protest is an unfair and impractical remedy and therefore an inadequate remedy.

Taxpayers are incorrect. While it may be true that by invalidating the Ordinance all property owners in Charleston County will be affected in future tax years, the instant case involves only four properties. Clearly, these Taxpayers have an adequate remedy provided under statute by paying their taxes under protest. *Id.; Textile Hall Corp. v. Riddle, supra.* Thus, the trial court did not err in denying injunctive relief.

Additionally, Taxpayers assert that an injunction remains a necessity even upon our invalidation of the Ordinance. According to Taxpayers, the County has demonstrated an unwillingness to eliminate implementation of the Ordinance, and Taxpayers fear the County will apply the selective exemption in tax year 2002. Taxpayers therefore implore this Court to issue an injunction or writ of mandamus requiring the County to not apply the exemption in tax year 2002 or other future tax years. However, given our decision that the Ordinance is unlawful, we are confident the County will act accordingly.

## CONCLUSION

We affirm the trial court's decision that the Ordinance violated the Enabling Act and hereby declare the Ordinance invalid. In addition, we affirm the trial court's denial of injunctive relief.

**AFFIRMED.**

MOORE, Acting C.J., BURNETT, PLEICONES, JJ., and Acting Justice GEORGE T. GREGORY, Jr., concur.