593 S.E.2d 462

**SUNSET CAY, LLC, Appellant,**

v.

**The CITY OF FOLLY BEACH, Respondent.**

**No. 25774.**

Supreme Court of South Carolina.

Heard Dec. 4, 2003.

Decided Jan. 27, 2004.

Rehearing Denied March 17, 2004.

416

418

John M.S. Hoefer and K. Chad Burgess, both of Willoughby & Hoefer, PA, of Columbia, for appellant.

Sandra J. Senn and Stephanie P. McDonald, both of Charleston, for respondent.

Justice BURNETT:

This case presents the issue of whether a municipality is required by the state Constitution and statutes to provide sewer service to all residents when it provides such service to any resident.

FACTS

In 1983, city council of the City of Folly Beach ("City") enacted an ordinance authorizing the construction of a sewer system following approval of the plan in a voter referendum. City built a system serving the central commercial district, using mostly state and federal grant monies. The system collects untreated wastewater and pumps it across the Folly River to an interconnection with the James Island Public Service District. The wastewater is then transported to the Charleston Commission for Public Works treatment and disposal.

In 1984, City adopted Ordinance No. 84–13, which governs the operation and extension of the sewer system. User charges fund the operation and maintenance of the system. Extensions must be funded and constructed by the person requesting them. Detailed plans of proposed extensions prepared by a registered engineer must be submitted to City for approval.

In February 2000, City enacted Ordinance No. 29–99, which stated "[t]here shall be no expansion of the sewer system beyond the commercial, C–1 and C–2, districts within the corporate boundaries of the City of Folly Beach ... without an affirmative vote of the Folly Beach City Council." In July 2000, City enacted Ordinance No. 14–00, which stated "sewer service shall not be extended outside of the existing C–1 and C–2 Districts to serve any additional buildings or residential units except residential units adjacent to the existing taps on the original gravity sewer line at the time of this ordinance." The ordinance preamble notes the original grants were to provide sewer service to the central commercial district; that it is not possible to foresee increased demands within that district; that City depends on two other entities to transport and treat the waste; and that City "is facing significant capital and overhead increases just to service the existing sewer."

In September 2001, Developer acquired about seven acres of land located within City's limits. Developer bought the property from the O'Rourks, who had tried but failed to obtain sewer service from City. Developer has paid city taxes on the property. Developer proposes to build eight residential duplexes on the property, but needs sewer service to do so. Without sewer service, Developer may be limited to building fewer duplexes with septic tanks.

Developer's property is located at the far western end of the island. The extension would require some 4,000 feet of new pipeline—equal to the amount already in place to serve the central commercial district. The extension would serve few residences and likely would require boring through sensitive marshlands. It would require one or more additional pumping stations and additional staff, maintenance, and operating expenses, City asserts. The residents of Folly Beach neither

need nor desire an island-wide sewer system "for a myriad of ecological and financial reasons," City contends.

Developer's property is zoned C–3 (marine commercial). Developer asserts the system has been extended at least ten times over the years to serve various commercial and residential properties, including at least one property zoned C–3 that is not located within the central commercial district. City concedes the system has been expanded, but asserts the system still is largely confined to the core commercial district as originally planned. Expansion of the system apparently has been a controversial issue among residents since it was built, with the majority of residents and council members choosing to limit expansion and the development likely to follow.

In March 2002, Developer's attorney wrote City, asking it "to acknowledge that it will accept the extension of sanitary sewer facilities" to Developer's property, with Developer funding the cost of the extension. City responded by letter, saying it "cannot extend the system or accept any extension under the existing ordinance," but Developer was welcome to request an extension from city council.

In April 2002, Developer brought a declaratory judgment action against City, alleging City is required to provide sewer service under the state Constitution and statutes and asking the court to enjoin enforcement of ordinances limiting expansion of the sewer system outside the central commercial district. Developer filed a motion for partial summary judgment, seeking a declaration that the ordinances on their face are contrary to state law and unconstitutional, and an order enjoining enforcement of the ordinances. The City subsequently filed a motion for summary judgment, contending the ordinances are valid under the state Constitution and statutes.

The circuit court dismissed the case without prejudice, ruling Developer's statutory and constitutional challenges to the ordinances were not ripe for review under the Uniform Declaratory Judgments Act. Developer timely filed a Rule 59(e), SCRCP, motion, arguing the issues were ripe for review and asking the Court to address them. The circuit court denied the Rule 59 motion. This appeal follows.

ISSUES

I. Did the circuit court err in ruling that Developer's statutory and constitutional challenges to the City's ordinance were not ripe for review under the Uniform Declaratory Judgments Act?

II. Does the City have the power, pursuant to the state Constitution and statutes, to enact an ordinance that on its face limits expansion of the sewer system unless city council affirmatively votes to approve an expansion?

III. Does an ordinance limiting expansion of the City's sewer system unless city council affirmatively votes to approve an expansion violate Developer's constitutional right to equal protection under the law?

IV. Does an ordinance limiting expansion of City's sewer system unless city council affirmatively votes to approve an expansion violate Developer's constitutional right to substantive due process of law?

DISCUSSION

I. Declaratory Judgment Act

 City contends Developer was required to submit an application, including a detailed construction proposal prepared by a registered engineer, and follow the extension process outlined in the ordinance. Developer's one letter asking City to acknowledge it would grant an extension and City's one letter in response did not constitute an application, City asserts. The circuit court declined to rule on the merits of Developer's arguments, and agreed with City the case was not ripe for review because Developer had not applied for a sewer extension.

Developer argues the circuit court erred in ruling its statutory and constitutional challenges to City's ordinance were not ripe for review under the Uniform Declaratory Judgments Act. See S.C.Code Ann. §§ 15–53–10 to –140 (1976 & Supp. 2002). Developer asserts its challenges to the ordinance were ripe for review because the record was sufficiently developed and "there would be no point in [Developer] exhausting a remedy that does not exist." We agree.

The Declaratory Judgments Act provides that "[c]ourts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." S.C.Code Ann. § 15–53–20 (1976). "Any person . . . whose rights, status, or other legal relations are affected by a statute [or] municipal ordinance . . . may have determined any question of construction or validity arising under the . . . statute [or] ordinance . . . and obtain a declaration of rights, status or other legal relations thereunder." S.C.Code Ann. § 15–53–30 (1976); see also Rule 57, SCRCP.

Despite the Act's broad language, it has its limits. An adjudication that would not settle the legal rights of the parties would only be advisory in nature and, therefore, would be beyond the intended purpose and scope of the Uniform Declaratory Judgments Act. *Power v. McNair*, 255 S.C. 150, 154, 177 S.E.2d 551, 553 (1970); *City of Columbia v. Sanders*, 231 S.C. 61, 68, 97 S.E.2d 210, 213 (1957). A declaratory judgment should not address moot or abstract matters. *Waller v. Waller*, 220 S.C. 212, 223, 66 S.E.2d 876, 882 (1951).

To state a cause of action under the Declaratory Judgment Act, a party must demonstrate a justiciable controversy. *Power v. McNair*, 255 S.C. at 154, 177 S.E.2d at 553. "A justiciable controversy is a real and substantial controversy which is appropriate for judicial determination, as distinguished from a dispute or difference of a contingent, hypothetical or abstract character." *Power v. McNair*, 255 S.C. at 154, 177 S.E.2d at 553; *Graham v. State Farm Mutual Automobile Ins. Co.*, 319 S.C. 69, 71, 459 S.E.2d 844, 845 (1995) (same); *Holden v. Cribb*, 349 S.C. 132, 137, 561 S.E.2d 634, 637 (Ct.App.2002) (same).

The Declaratory Judgments Act is a proper vehicle in which to bring a controversy before the court when there is an existing controversy or at least the ripening seeds of a controversy. *Waller*, 220 S.C. at 223, 66 S.E.2d at 882. The basic purpose of the Act is to provide for declaratory judgments without awaiting a breach of existing rights. The Act should be liberally construed to accomplish its intended purpose of affording a speedy and inexpensive method of deciding legal disputes and of settling legal rights and relationships, without awaiting a violation of the rights or a disturbance of

the relationship. *Graham,* 319 S.C. at 71, 459 S.E.2d at 845; *Power,* 255 S.C. at 154, 177 S.E.2d at 553; *Waller,* 220 S.C. at 223, 66 S.E.2d at 882; *Pond Place Partners, Inc. v. Poole,* 351 S.C. 1, 16, 567 S.E.2d 881, 888–89 (Ct.App.2002).

Our courts have found the existence of a justiciable controversy, for example, in determining whether a vehicle insurance policy should be reformed to include underinsured motorist coverage, *Graham, supra;* in determining whether the consolidation of two municipalities resulted in the merger of municipally owned utility systems, *City of Columbia, supra;* in the determination of heirs' contingent or vested interest under a will, *Waller, supra;* in deciding whether the court should issue a writ of mandamus directing the sheriff to accept a non-cash bid at a judicial sale, *Holden, supra;* and in a dispute involving homeowners' challenge to amendments of their subdivision's restrictive covenants, *Pond Place Partners, supra.*

■ Furthermore, we agree with Developer that a party is not required under the Declaratory Judgments Act to spend time and money complying with what allegedly is an invalid or unconstitutional ordinance. See *Town of Hilton Head Island v. Coalition of Expressway Opponents,* 307 S.C. 449, 455, 415 S.E.2d 801, 805 (1992) (finding a justiciable controversy in a pre-election review of a voter-initiated ordinance and reasoning that, when an ordinance is alleged to be facially defective, "it is wholly unjustified to allow voters to give their time, thought, and deliberation to the question of desirability of the legislation as to which they are to cast their ballots, and thereafter, if their vote be in the affirmative, confront them with a judicial decree that their action was in vain") (quoting *Schultz v. City of Philadelphia,* 385 Pa. 79, 122 A.2d 279, 283 (1956)).

A justiciable controversy exists in the present case. City has enacted an ordinance limiting the expansion of its sewer system. Developer, a city resident, has purchased property within the City and wishes to build houses on it. Developer's plans are directly affected by the ordinance at issue. Developer has challenged the validity of the ordinance on statutory and constitutional grounds. The controversy is real and substantial; it is not contingent, abstract, or hypothetical. The validity of the ordinance and the parties' rights under it as they presently exist will be resolved by our decision.

II: Power to enact and validity of challenged ordinance

 Developer argues City does not have the power to enact an ordinance that on its face limits expansion of the sewer system unless city council affirmatively votes to approve the expansion. City does not have the discretion to preclude residents of particular areas from obtaining a sewer extension because it has a statutory and constitutional duty to make such service equally available to all residents if it is available to any, Developer argues. We disagree.

 "A municipal ordinance is a legislative enactment and is presumed to be constitutional." *Whaley v. Dorchester County Zoning Bd. of Appeals*, 337 S.C. 568, 575, 524 S.E.2d 404, 408 (1999). The burden of proving the invalidity of an ordinance is on the party attacking it. *Id.* Determining whether an ordinance is valid is a two-step process. First, the Court must determine whether a municipality has the power to adopt the ordinance. If no power exists, the ordinance is invalid. Second, the Court must determine whether the ordinance is consistent with the Constitution and general laws of this state. *Riverwoods, LLC v. County of Charleston*, 349 S.C. 378, 384, 563 S.E.2d 651, 654 (2002); *Bugsy's, Inc. v. City of Myrtle Beach*, 340 S.C. 87, 93, 530 S.E.2d 890, 893 (2000).

The Constitution provides, in pertinent part, that "[a]ny incorporated municipality may, upon a majority vote of the electors of such political subdivision who shall vote on the question, acquire by initial construction or purchase and may operate gas, water, sewer, electric, transportation or other public utility systems and plants." S.C. Const. art. VIII, § 16 (emphasis added).

"Each municipality of the State ... may enact regulations, resolutions, and ordinances, not inconsistent with the Constitution and general law of this State ... respecting any subject which appears to it necessary and proper for the security, general welfare, and convenience of the municipality or for preserving the health, peace, order, and good government in it...." S.C.Code Ann. § 5–7–30 (Supp.2002). See also *Hospitality Ass'n of South Carolina, Inc. v. County of Charleston*, 320 S.C. 219, 464 S.E.2d 113 (1995) (only limit on broad grant of power to municipalities in § 5–7–30 is the regulation or ordinance be consistent with the Constitution and general laws).

More specifically, "any city or town may ... [c]onstruct, purchase, operate and maintain waterworks and electric light works within or without, partially within and partially without, their corporate limits for the use and benefit of such city or town and the inhabitants thereof...." S.C.Code Ann. § 5-31-610 (1976) (emphasis added). "Upon the written request of any property owner requesting the city or town to extend to him water and sewer service and agreeing to pay the cost thereof the city or town may provide such service...." S.C.Code Ann. § 5-31-1510 (1976) (emphasis added). A municipality may impose charges and assessments on users and specified property owners to fund the cost of constructing, operating, and maintaining a sewer system. S.C.Code Ann. § 5-31-2010 to -2040 (1976).

No constitutional or statutory provision imposes a duty on City to provide sewer service to all residents if it provides such service to any. The provisions consistently use the permissive term "may." See *Waites v. S.C. Windstorm & Hail Underwriting Ass'n*, 279 S.C. 362, 365, 307 S.E.2d 223, 224 (1983) (agreeing with lower court's ruling that legislature used the word "may" in statute as permissive and not mandatory); *Graham v. Alliance Ins. Co.*, 192 S.C. 370, 6 S.E.2d 754, 755 (1940) (statute providing persons interested in controversy "may" be made defendants is permissive and not mandatory).

Moreover, § 5-31-610 specifically states that utility services may be provided "partially within" corporate limits. The Legislature has recognized that a municipality—for financial or other legitimate reasons—may be able to provide sewer service or other utilities for only part of its residents. See, e.g., *Riverwoods*, 349 S.C. at 384, 563 S.E.2d at 654 ("cardinal rule of statutory construction is for the Court to ascertain and effectuate the intent of the Legislature").

■ The circuit court correctly noted any resident must be able to apply for sewer service, as Developer is free to do in this case. However, the decision whether to grant a sewer extension request generally must be left to the sound discretion of municipal leaders, who are charged with considering all the various factors, including financial and economic implications, aesthetic and environmental concerns, feasibility of a particular plan, and the effect of an extension on the municipality's long-range zoning, planning, or organization. See

*Annot. Right to Compel Municipality to Extend Its Water System*, 48 A.L.R.2d 1222 (1956) (citing cases in which courts have concluded, although a city-owned water system should impartially supply all applicants who are similarly situated, it generally has been held a municipality has the discretion to decide whether to extend its system to an entirely new section within its limits; municipality usually cannot be compelled to do so at the instance of a prospective consumer, at least if its basis for refusing is in any way reasonable and does not involve any abuse of discretion or arbitrary or fraudulent action).

Developer relies primarily on three cases in support of its argument, asserting they stand for the proposition that a city-owned utility has a duty to make service available to all its residents: *Childs v. City of Columbia*, 87 S.C. 566, 70 S.E. 296 (1911); *Looper v. City of Easley*, 172 S.C. 11, 172 S.E. 705 (1934), overruled on other grounds by *McCall by Andrews v. Batson*, 285 S.C. 243, 329 S.E.2d 741 (1985); and *Sloan v. City of Conway*, 347 S.C. 324, 555 S.E.2d 684 (2001).

In Childs, a non-resident water customer sought an injunction to prevent the city of Columbia from cutting off his water or increasing his rates. In rejecting the customer's contract-based arguments and explaining the different status of residents and non-residents, the Court stated: "The statute passed in pursuance of the constitutional provision ... expressed the limitation of duty to residents of the city implied in the Constitution by the provision that the construction and operation of municipal waterworks should be 'for the use and benefit of said cities and towns and its citizens.'" *Childs*, 87 S.C. at 570, 70 S.E. at 298.

In Looper, the Court rejected a non-resident business owner's attempt to hold the city-owned electrical utility liable in contract or tort for failing to install equipment designed to prevent fires caused by lightning strikes on the power lines. The Court noted that the provision of electricity to either residents or non-residents was a governmental function, but "the main difference is that the municipal authorities may be required to furnish the inhabitants of the municipality, while they may not be forced to furnish those living beyond the limits of the municipality." *Looper*, 172 S.C. at 15, 172 S.E. at 706–707.

In Sloan, the Court rejected various challenges to a municipality's decision to charge higher water rates to non-residents than residents. Relying on Childs, the Court again noted the distinction between residents and non-residents in relations with a city-owned utility.

Developer's reliance on Childs, Looper, and Sloan is misplaced. None of those cases in any way suggests a municipality has a duty to provide a given utility service to everyone if it provides it to anyone. At most, Childs can be read to say that a municipality owes a duty to its residents to operate a publicly owned utility for the use and benefit of the residents. The word "duty" is not mentioned in Looper, although the Court noted in passing that a municipality "may" be required to provide a given service to residents but not non-residents. Sloan simply reiterates that residents and non-residents do not always stand on equal footing when dealing with a city-owned utility.

City properly exercised its legislative power to enact the challenged ordinance, and the ordinance is not contrary to the cited statutory or constitutional provisions.

III. Equal protection

Developer contends an ordinance limiting expansion of City's sewer system unless city council affirmatively votes to approve an expansion violates its constitutional right to equal protection under the law. City has treated residents outside the C–1 and C–2 districts as "second-tier inhabitants." The pertinent class includes "all of City's inhabitants," and City's failure to treat all of them alike under similar circumstances violates the equal protection clause, Developer argues. We disagree.

No person shall be denied the equal protection of the laws. S.C. Const. art. I, § 3. To satisfy the equal protection clause, a classification must (1) bear a reasonable relation to the legislative purpose sought to be achieved, (2) members of the class must be treated alike under similar circumstances, and (3) the classification must rest on some rational basis. *Jenkins v. Meares*, 302 S.C. 142, 146–147, 394 S.E.2d 317, 319 (1990). The rational basis standard, not strict scrutiny, is applied in this case because the classification at

issue does not affect a fundamental right and does not draw upon inherently suspect distinctions such as race, religion, or alienage. See *Fraternal Order of Police v. S.C. Dep't of Revenue*, 352 S.C. 420, 433, 574 S.E.2d 717, 723 (2002); *Bryant v. Town of Essex*, 152 Vt. 29, 564 A.2d 1052, 1056 (1989) (provision of sewer service does not implicate fundamental right).

A legislative enactment will be sustained against constitutional attack if there is any reasonable hypothesis to support it. *Gary Concrete Products, Inc. v. Riley*, 285 S.C. 498, 504, 331 S.E.2d 335, 338–39 (1985) (citing *Thomas v. Spartanburg Ry., Gas & Elec. Co.*, 100 S.C. 478, 85 S.E. 50 (1915)). The Court must give great deference to a legislative body's classification decisions because it presumably debated and weighed the advantages and disadvantages of the legislation at issue. Furthermore, "[t]he classification does not need to completely accomplish the legislative purpose with delicate precision in order to survive a constitutional challenge." *Foster v. South Carolina Dep't of Highways & Pub. Transp.*, 306 S.C. 519, 526, 413 S.E.2d 31, 36 (1992).

In this case, City has created two classes—one consisting of residents inside the C–1 and C–2 districts and one consisting of residents outside those districts. City generally has treated residents within each of those classes alike under similar circumstances, although City admits it previously has extended sewer service to at least one property in a C–3 district.

The legislative purposes sought to be achieved by City's classifications are (1) the provision of sewer service to residents primarily located within City's central commercial district and (2) limiting substantial expansion of sewer service because the majority of council members and residents wish to prevent or limit the additional operating and maintenance costs, environmental impact, and development likely to follow. Thus, the classifications bear a reasonable relation to the legislative purposes because they accomplish those purposes.

Furthermore, the classifications rest on rational bases—providing sewer service to a limited area due to the financial burden of additional operating and maintenance costs for all users, aesthetic and environmental concerns, and the effect on City's long-range zoning, planning, or organization. The chal-

lenged ordinance does not violate Developer's right to equal protection under the law.

IV. Substantive due process

■ Developer argues an ordinance limiting expansion of City's sewer system unless city council affirmatively votes to approve an expansion violates its constitutional right to substantive due process under the law. We disagree.

■ No person shall be deprived of life, liberty, or property without due process of law. S.C. Const. art. I, § 3. In order to prove a denial of substantive due process, a party must show that he was arbitrarily and capriciously deprived of a cognizable property interest rooted in state law. *Worsley Companies, Inc. v. Town of Mt. Pleasant,* 339 S.C. 51, 528 S.E.2d 657 (2000). A property owner does not have a protected property interest in connecting to a sewer line. *Id.* As explained in Issue 2, the state Constitution and statutes generally grant a municipality the discretion to decide whether to extend sewer service to additional residents within its corporate boundaries. *Cf. Scott v. Greenville County,* 716 F.2d 1409, 1418 (4th Cir.1983) (finding a property interest was protected by substantive due process where a developer was entitled to issuance of a building permit upon presentation of application and plans showing a use expressly permitted under then-current zoning ordinance).

■ We recently held that the standard for reviewing all substantive due process challenges to state statutes, including economic and social welfare legislation, is whether the statute bears a reasonable relationship to any legitimate interest of government. *R.L. Jordan Co. v. Boardman Petroleum, Inc.,* 338 S.C. 475, 477, 527 S.E.2d 763, 765 (2000). "The purpose of the substantive due process clause is to prohibit government from engaging in arbitrary or wrongful acts regardless of the fairness of the procedures used to implement them." *In re Treatment and Care of Luckabaugh,* 351 S.C. 122, 140, 568 S.E.2d 338, 347 (2002) (internal quotes omitted). We apply this same standard in reviewing challenges to a municipal ordinance.

Developer's argument fails for two reasons. First, Developer does not have a cognizable property interest in sewer service that is rooted in state law. Second, the ordinances at

issue in this case bear a reasonable relationship to a legitimate interest of government. City has a legitimate interest in controlling the expansion of its sewer system due to the financial burden of additional operating and maintenance costs for all users, aesthetic and environmental concerns, and the effect on City's long-range zoning, planning, or organization. City has not acted arbitrarily or wrongfully in enacting the ordinances. The challenged ordinance does not violate Developer's right to substantive due process under the law.

CONCLUSION

We conclude (1) a justiciable controversy exists in the present case, such that review of Developer's challenge to the facial validity of the ordinance is appropriate under the Declaratory Judgments Act; (2) City properly exercised its legislative power to enact the challenged ordinance, and the ordinance is not contrary to statutory or constitutional provisions; and (3) the challenged ordinance does not violate Developer's constitutional rights to equal protection and substantive due process under the law.

REVERSED.

MOORE, A.C.J., WALLER, PLEICONES, JJ., and Acting Justice J. ERNEST KINARD, JR., concur.